IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01088–MSK –KMT

GREENWAY NUTRIENTS, INC.,

Plaintiff,

v.

STEVE BLACKBURN,
STACY BLACKBURN,
DAVID SELAKOVIC,
FULFILLMENT SOLUTIONS SERVICES, LLC,
ECOWIN, LLC,
NEW EPIC MEDIA, LLC
CHRIS KOHLHAGEN,
BEA'S HIVE, LLC,
VEGALAB, LLC,
GRINGO DIABLO HYDRO,
GROWER TRUST, LLC,
SUPREME GROWERS, LLC,
HOOPS ENTERPRISE, LLC
JAMES HALK,
DAVE THOMPSON,
DAVID Y.S. PARK,
KOO KYUNG-BON,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on Defendants Steve Blackburn, Stacy Blackburn, David

Selakovic, Fulfillment Solutions Services, LLC, Vegalab, LLC, Grower Trust, LLC, and Dave

Thompson's[1] Motion to Dismiss filed May 21, 2013.   [Doc. No. 27.]   Also pending is Supreme

Growers, LLC's "Motion to Dismiss Adopting Prior Motion (D.E. 27)" filed July 17, 2013.

[Doc. No. 68]   "Plaintiff's Opposition to Motion to Dismiss" [Doc. No. 39] was filed on June 11,

2013.   No reply was filed.   On February 6, 2014, the "Motion to Dismiss on Behalf of Defendant

Hoops Enterprises, LLC"[2] [Doc. No. 97] was filed adopting the arguments set forth in Doc. No.

27.   Upon review, the court does not require further briefing on this motion separately from that

already reviewed.

Defendants allege that the Complaint[3] should be dismissed because: (1) taken as a whole,

the pleading represents a prohibited "shotgun" pleading in violation of Fed. R. Civ. P. 8; (2) the

court lacks personal jurisdiction over the out-of-state defendants; and (3) as to each of the counts

asserted, Plaintiff has failed to state a claim upon which relief can be granted.

---

[1] Defendant Josh Gill was dismissed from the action on July 22, 2013 [Doc. No. 73]. There is no evidence of service on Defendants Ecowin, LLC, New Epic Media, LLC, Chris Kohlhagen, Bea's Hive, LLC, Gringo Diablo Hydro, James Halk, David Y.S. Park, and Ko Kyung-Bon.   New Epic Media, LLC and Bea's Hive, LLC purportedly are owned by Defendant Steve Blackburn; Defendant Kohlhagen is an employee of New Epic Media, LLC so in turn is a purported employee of Steve Blackburn.   In spite of this common denominator, these entities have not yet appeared in the case.

[2] Throughout the Complaint, this entity is identified as Hoops Enterprise (singular); however in the motion filed on its behalf, the entity is called Hoops Enterprises (plural).   For purposes of continuity, this Order adopts the singular as pleaded in the Complaint.

[3] The Complaint [Doc. No. 2] was originally filed under seal.   The court did not allow the entire Complaint to be sealed, but instead required the Plaintiff to file a redacted version of the Complaint for the public record [Doc. No. 36].   References to the Complaint in this Order are to the unredacted Complaint [Doc. No. 2].

### LEGAL STANDARDS

#### A.    Personal Jurisdiction

The plaintiff has the burden of proving that personal jurisdiction over each defendant exists, although at preliminary stages of the litigation that burden is light.   *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).   If the court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion.   *Id*. at 1056-57.   In making this determination, all factual disputes should be construed in favor of the plaintiff.   *Id*. at 1057.   The Court must take as true "all well-pled (that is, plausible, non-conclusory, and non-speculative) facts" alleged in the complaint in the light most favorable to the Plaintiff.   *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1069-70 (10th Cir. 2008).   For this court to exercise personal jurisdiction over a defendant, there must be both a showing that (i) jurisdiction is proper under the laws of Colorado, and (ii) the exercise of jurisdiction does not offend the Due Process clause of the Fourteenth Amendment.   *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).

Colorado's long arm statute is coextensive with the constitutional limitations imposed by the Due Process clause; therefore, the inquiry collapses into the single determination of whether jurisdiction is consistent with the Due Process clause.   *See id.*   The Due Process clause requires a non-resident defendant to have "minimum contacts" with the forum state.   *See OMI Holdings, Inc.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*,

3

444 U.S. 286, 291 (1980)).   The "minimum contacts" standard may be met by showing either general or specific jurisdiction over the defendant.   *Id.*

A court may exercise general jurisdiction over a defendant for any claim, whether arising from activities in the state or not, if the defendant has sufficiently strong business contacts with the forum state.   Because general jurisdiction is not tied to the events forming the basis for the litigation, however, a court imposes a stringent minimum contacts test, requiring the defendant to have "continuous and systematic general business contacts" with the forum state.   *Trujillo v. Williams*, 465 F.3d 1210, 1218 n. 7 (10th Cir.2006) (internal citation omitted).   General personal jurisdiction over a party permits the forum to resolve any dispute involving that party, not just the dispute at issue. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

Alternatively, a court may exercise specific jurisdiction over a defendant if the defendant's actions in or directed at the forum give rise to the litigation.   The specific personal jurisdiction test is two-pronged, with interplay between the two prongs.   *OMI Holdings, Inc.*, 149 F.3d at1091. Under the first prong, a court decides whether the defendant has sufficient minimum contacts with the forum state such that he should "reasonably anticipate being haled into court there."   *World–Wide Volkswagen*, 444 U.S. at 297,   This inquiry requires a determination of whether the defendant "purposefully directed" its activities at residents of the forum and whether the action "arises out of or relates to" the defendant's own activities within the state and creates a "substantial connection" with the forum state.   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

4

The second prong of the specific jurisdiction analysis is whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987).   This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case.   In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.   *See TH Agriculture & Nutrition, LLC v. Ace European Group Ltd*., 488 F.3d 1282, 1292 (10th Cir. 2007). The test evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.   *OMI Holdings, Inc.*, 149 F.3d at 1092.

When communications on the internet form a significant part of the asserted basis for jurisdiction, special issues can arise. The Tenth Circuit recently addressed questions relating to "whether, when, and how such peculiarly non-territorial activities as web site hosting, internet posting, and mass emailing can constitute or give rise to contacts that properly support jurisdiction over the host, poster, or sender."   *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). Noting that a person can place information on the internet and thereby communicate with persons in virtually every jurisdiction, the Tenth Circuit emphasizes the importance, for the purposes of

personal jurisdiction, that the person intentionally direct the activity or operation at the forum state, "rather than just having the activity or operation accessible there." *Id*. at 1240. The Tenth Circuit cited with approval *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002), which developed the following test for specific jurisdiction arising out of internet activity: the person (1) directs electronic activity into the forum state, (2) with the manifested intention of engaging in business or other interactions within the state, (3) that activity creates, in a person within the state, a potential cause of action cognizable in the state's courts. *Id*.

*Shrader* explains that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Id*. In considering what more is needed to create personal jurisdiction, "courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id*. With respect to general jurisdiction, *Shrader* emphasizes that before internet contacts may give rise to personal jurisdiction, the "commercial contacts . . . must be of a sort that approximate physical presence in the state." *Id*. Although "operating a web site selling products to residents of a state can subject the seller to general jurisdiction in that state, depending on the nature and degree of commercial activity with the forum state," the bar is "quite high" and the plaintiff must demonstrate "substantial sales." *Id*. In short, "[a] web site will subject a defendant to general personal jurisdiction only when the defendant has actually and

deliberately used its web site to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." *Id*.

### B.   Pleading Requirements/Fed. R. Civ. P. 8

The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the court to conclude that the allegations, if proven, show that Plaintiff is entitled to relief.   *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas* , 891 F.2d 1473, 1480 (10th Cir. 1989). The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes.   *See TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991). Specifically, Rule 8(a) provides that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ."   The philosophy of Rule 8(a) is reinforced by Rule 8(d)(1), which provides that "[e]ach allegation must be simple, concise, and direct."   Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules.   Prolix, vague, or unintelligible pleadings violate the requirements of Rule 8.

Recently, Colorado federal courts have strongly criticized the use of "shotgun pleading," by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.   *International Academy of Business and Financial Management, Ltd. v. Mentz,* Case No. 12-cv-00463-CMA-BNB, 2013 WL 212640, *7 (D. Colo. July 17, 2013)(unpublished).   *See also, Jones v. Lehmkuhl,* 11-cv-02384-WYD-CBS, 2013 WL 6728951,

*23 -24 (D. Colo. Dec. 20, 2013)(Senior Judge Wiley Y. Daniel described a shotgun pleading as a

"grab-bag of legal theories.")   As was noted by District Judge Christine M. Arguello,

> Shotgun pleading is an attractive option for the pleader, who can simply recite an
> extended narrative at the beginning of the pleading, and proceed to state numerous
> claims by simply reciting the formulaic elements of the claim and referring
> holistically to the preceding narrative as support. But doing so places an inordinate
> burden on the party responding to that pleading, and on the Court interpreting it,
> requiring them to parse the narrative repeatedly and attempt to independently
> extract the particular factual averments that are relevant to each individual claim.
> Essentially, the shotgun pleader foists off one of the pleading lawyer's critical
> tasks—sifting a mountain of facts down to a handful of those that are relevant to a
> given claim—onto the reader.

*Jacobs v. Credit Suisse First Boston*, Case No. 11–cv–00042-CMA-KLM, 2011 WL 4537007, *6

(D. Colo. Sept. 30, 2011) (unpublished) (finding "shotgun pleading" to be a "defect" contributing

to an award of sanctions).   Courts roundly decry shotgun pleading as a subject of "great dismay,"

"intolerable," and "in a very real sense . . . [an] obstruction of justice."   *Strategic Income Fund,*

*L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 n. 9, 10 (11th Cir.2002).

Plaintiff is, of course, entitled to plead claims in the alternative, regardless of consistency,

even though it ultimately will not necessarily be able to recover on all of those claims and pleading

in the alternative does not necessarily render the complaint "shotgun."   Fed. R. Civ. P. 8(d)(3) ("A

party may state as many separate claims or defenses as it has, regardless of consistency."); *Murray*

*v. Crawford,* Case No. 08-cv-02045-KMT-KLM, 2009 WL 1837445, at *4 (D. Colo. June 26,

2009) (complaint properly pleaded, in the alternative, claims for breach of contract and promissory

estoppel).   So long as one of those alternative claims is sufficient, the pleading is sufficient.   *See*

Fed. R. Civ. P. 8(d)(2).

8

**C.**      ***Failure to State a Claim/Fed. R. Civ. P. 12(b)(6).***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6) (2007).   "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."   *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's <u>factual</u> allegations are true and construes them in the light most favorable to the plaintiff."   *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991) (emphasis added).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   The *Iqbal* evaluation requires two prongs of analysis.   First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.   *Id*. at 1949−51.   Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id*. at 1951.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.   *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1940.   Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "   *Id.* at 1949 (citation omitted).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' "   *Iqbal*, 129 S. Ct. at 1949.

### FACTUAL ALLEGATIONS

The following factual allegations,[4] stripped of legal conclusions, bare assertions and conclusory statements, are taken from the Complaint:

Plaintiff Greenway Nutrients, lnc. ("Greenway"), a supplier of plant nutrients and organic pesticides to the botanical industry, is incorporated in the state of Colorado.   (Compl. [Doc. No. 2] at ¶¶ 5, 26.)   Greenway is the owner of U.S. Trademark Reg. No. 4007591 for the name "Greenway Nutrients."   (*Id.*)   Greenway, at an unspecified point in time, discovered a product compounded and produced by Defendant Ecowin, a South Korean entity, which purports to

---

[4] In the context of this Complaint, when the plaintiff begins a paragraph with the phrase "on information and belief," it is clear to the court that the plaintiff is positing an assumption or surmise, i.e. a naked assertion or conclusion, and while it may be a theory consistent with the plaintiff's position, such assertions are not allegations of fact.   (See e.g., ¶¶ 42, 44, 45, and 47.)

10

"eliminate powdery mildew."[5]   (*Id.* at ¶ 27.)   On or about March 1, 2012, Greenway alleges it entered into an "exclusive"[6] agreement with Ecowin to distribute its compounded substance.   (*Id.* at ¶ 41.)   Greenway began buying the product, which Greenway called "No Powdery Mildew"[7] from Ecowin and marketing it under the "Greenway Nutrients" name.   (*Id.* at ¶ 27.)   During the same unspecified time period, Greenway also discovered and began marketing a product Greenway called "No Spider Mites."[8]   (*Id.* at ¶ 28

On an unspecified date, Greenway[9] was introduced to Steven and Stacy Blackburn and was informed that Fulfillment Solutions Services, LLC (hereinafter "Fulfillment") was a company owned by Steven Blackburn.   (*Id.* at ¶ 29.)   On or around April 21, 2011, approximately one year prior to Greenway's alleged contractual agreement with Ecowin, Greenway executed a

---

[5]  The complaint does not specify from what "powdery mildew" would be eliminated; however, given the business of Greenway, the court will infer that powdery mildew is a substance which is disadvantageously associated with plant life.

[6]  The contract between Ecowin and Greenway is not attached to the complaint.   There is no definition of the term "exclusive" as it was purportedly used in the contract, nor is there any time length provided with respect to the contract.   In fact, no terms of the contract are contained in the complaint, including what would constitute a breach of said contract.

[7]  There is no allegation in the complaint that "No Powdery Mildew" is a registered trademark.   The Complaint does allege that "No Spider Mites" and "No Powdery Mildew" are "common-law marks" because the "Plaintiff has established strong rights to these marks through extensive and continuous use in commerce."   This claim is not supported by further factual enhancement, however.   (*See* Compl. at ¶ 92.)

[8]  The Complaint does not specify the manufacturer of this product.   The complaint does not allege that Greenway had a contract allowing its distribution of "No Spider Mites," nor is there any allegation that the name is protected as a trademark other than that described in footnote 7, *supra*.

[9]  At times, the Complaint refers to Greenway, the company, as though it is an individual person and, for instance, does not make reference to the individual(s) who was actually involved in the alleged introduction on behalf of Greenway.

non-disclosure agreement with New Epic Media LLC (hereinafter "New Epic") through its

purported owner Steve Blackburn.[10]   (*Id.* at ¶ 29.)   The contract states that certain confidential

information will be disclosed by Greenway to New Epic.   The agreement limits the use and

dissemination of the "confidential information" belonging to Greenway; however, the contract

does not specify for what purpose the confidential material is being disclosed.   (Compl., Ex. 1 at ¶

7, providing that New Epic will use the material "solely for the purpose described above.")

During the same time period, Greenway and Steve Blackburn began to discuss a business

arrangement whereby Fulfillment would provide bottling and shipping for Greenway's products.

(*Id.* at ¶ 29.)   To that end, Greenway and Fulfillment entered into an agreement on June 21, 2011.

(*Id.* at ¶ 31, Ex. 2).   Fulfillment represented to Greenway that it had sufficient expertise in filling

bottles, labeling, shipping, customer service, and sales and stated it had a platform for ordering and

billing.   (*Id.* at ¶ 32.)   Blackburn also told Greenway there was the possibility of a further

business relationship involving Blackburn's business partner, Defendant David Selakovic.   (*Id.* at

¶ 30.)

Greenway, however, lacked the financial capability to purchase its nutrient products in

quantity for Fulfillment to process.   (*Id.* at ¶ 33.)     Steve Blackburn therefore arranged for

Selakovic to pay for the purchase of unspecified quantities of "No Powdery Mildew" and "No

---

[10]   The Complaint states that this contract was entered into with Fulfillment Solutions
Services, LLC; however the contract itself is attached to the Complaint as Ex. 1.   The parties to
Exhibit 1 are Greenway Nutrients and New Epic Media, LLC.   Steve Blackburn is the alleged
owner of both Fullfillment and New Epic Media and Steve Blackburn is the signatory for New
Epic on Exhibit 1.

Spider Mites" utilizing his own credit card, with the understanding that Selakovic would be reimbursed.[11]   (*Id.* at ¶¶ 33-34.)   Selakovic did make payment for an unspecified amount of raw product materials.   (*Id.*)   The product purchased by Selakovic was to be processed by Fulfillment under the Greenway Nutrients mark.   (*Id.* at ¶ 34.)   As part of the process to obtain Selakovic's agreement to fund the product purchases, Greenway provided information to Steve Blackburn, Fulfillment, New Epic, and Defendants Josh Gill and Chris Kohlhagen, both employees of New Epic (*id.* at ¶ 36), including Greenway's financial information and alleged trade secrets, including the "identity of its manufacturers and suppliers, its supply chain, retailers, wholesalers, and industry contacts along with Greenway's internal notes and pricing" and information about Greenway's web presence (*id.* at ¶¶ 35-37).

At some time prior to November 2012, Greenway and Steve Blackburn had a dispute about an unspecified "accounting" between "the parties."   (*Id.* at ¶ 39.)   Said "accounting" was purportedly being handled through another of Steve Blackburn's companies, Defendant Bea's Hive.   (*Id.*)   Blackburn suggested the dispute could be resolved by allowing David Selakovic to invest in Greenway.   (*Id.* at ¶ 40.)   Blackburn thereafter visited the business premises of Greenway for two days.[12]   (*Id.*)   Although the timing is unclear, Greenway alleges that

---

[11]  Who would make the reimbursement to Selakovic is not stated in the Complaint.

[12]  The complaint is silent regarding the outcome of the accounting dispute and the potential investment by Selakovic in Greenway, except for the conclusory phrase in paragraph 39 of the Complaint that certain activities were engaged in by Blackburn in order to "terminate the contractual relationship with Greenway and to justify keeping all the stock on hand . . . ."

"Blackburn was holding all of Greenway's supplies [ ] at Fulfillment Solutions based on a [ ] accounting dispute . . . ."[13]   (*Id.* at ¶ 46.)

In November of 2012, Greenway submitted its "usual" order to Defendant Park and Ecowin for "No Powdery Mildew."   (*Id.* at 43.)   Ecowin informed Greenway that Park was no longer employed by Ecowin and that Ecowin was associating with "other partners" in the United States.   Thereafter, Ecowin refused to fill Greenway's order for "No Powdery Mildew."   (*Id.* at ¶ 43.)

At an unspecified time thereafter, Greenway alleges that Blackburn, Selakovic, Park, Ecowin and Fullfillment began selling a product similar to "No Spider Mites," renamed "Spider Mite Killer" under the Greenway Nutrients' label which plaintiff believes had been reverse engineered from Greenway's original "No Spider Mites."   (*Id.* at ¶ 47.)

Plaintiff alleges Defendant Selakovic formed Vegalab, LLC in January 2013 and is its registered agent.   (*Id.* at ¶ 52.)   In February 2013, Greenway arranged to have an intermediary make a clandestine contact with Ecowin.   The individual responding at Ecowin stated that Vegalab was its new distributor for the powdery mildew elimination product.   (*Id.* at ¶ 52.) Greenway again made a clandestine contact with Vegalab, arranging for the contact to purchase a product called "Mildew Control" from Vegalab.   Vegalab required payment for that purchase to be made via wire transfer to Fulfillment.[14]   (*Id.*)

---

[13]   Redacted to omit conclusory allegations.

[14]   There is no further information about the product which was actually received as a result of this order or whether, in fact, any product was shipped from Vegalab, Fulfillment or any where else.

14

In March 2013, Greenway directly contacted Defendant Park[15] at Ecowin who informed Greenway that Vegalab was the representative partner of Ecowin at that time and advised Greenway that Ecowin was selling the same powdery mildew product to Vegalab which it had previously sold to Greenway.   (*Id.* at ¶ 53.)

Greenway alleges that one or all of the Defendants, again at unspecified points in time, began selling the stock[16] of Greenway which was in the possession of Steve Blackburn and Fulfillment through companies Supreme Growers, Grower Trust and Vegalab.   (*Id.* at ¶ 48.)   In support of this allegation, Greenway states that in and after November 2012, the following took place:

a.   In November 2012, an unspecified person at Greenway's customer, Sunlight Supply, told an unspecified person at Greenway that Steve Blackburn offered to sell Greenway-labeled "No Spider Mites" and No Powdery Mildew" to them at greatly reduced prices, telling Sunlight Supply that Blackburn had funded the development of the Greenway product line. (*Id.* at ¶ 49.)

b.   In November 2012, an unspecified person at Greenway's customer, Watch It Grow, told an unspecified person at Greenway that Supreme Growers was selling Greenway's "No Spider Mites" and "No Powdery Mildew" for "amazing" prices and stated that all of Supreme

---

[15] The complaint at paragraph 43 states that Greenway was told Park was no longer working at Ecowin; however, in paragraph 53 the Complaint indicates that an unspecified person at Greenway actually communicated with Park at Ecowin.

[16] The complaint is not clear, but it appears this reference to 'stock' is directed at the product purchased by Selakovic on his personal credit card and which was in the possession of Fulfillment for processing, and which was the subject of the dispute in "accounting."

Growers' "Greenway liquidation" was, at that time, located in West Palm Beach, Florida, the location of Steve Blackburn and his various companies.   (*Id.* at ¶ 50.)

   c. Greenway alleges it "became aware" at some unspecified time and by unspecified means, that Grower Trust[17] was selling "No Spider Mites" and No Powdery Mildew" under the "rebranded names" of "Spider Mite Killer and "Powdery Mildew Killer" and was offering the products for sale on the internet.   (*Id.* at ¶ 51.)

   d. At an unspecified time, Gringo Diablo Hydro was selling Greenway-labeled "No Spider Mites" and "No Powdery Mildew" on the internet which it claims to have obtained through "Vega Labs."   (*Id.* at ¶ 54.)

   e. At an unspecified time, Hoops d/b/a/ Lookout Deals was selling Greenway labeled "No Spider Mites" and No Powdery Mildew" on the internet in old size bottles.   (*Id.* at 55.)

  ***ANALYSIS***

  ***A. Jurisdiction***

   ***1. RICO – Count I***

  If Congress statutorily authorizes nationwide service of process under a given statute, then proper service establishes personal jurisdiction over a defendant thereunder, provided that the

---

[17]  The Complaint states that Grower Trust was established in 2011 by Dave Thompson. (*Id.* at ¶ 51.)   No association is set forth linking Dave Thompson in any way or manner to Steve Blackburn.   However, Greenway also states in paragraph 37 of the Complaint that former defendant Gill and defendant Kohlhagen assisted Blackburn in starting Defendant Grower Trust. These allegations are inconsistent and, therefore, the court is not able to determine if Grower Trust has any relationship to other defendants in the case.

court's exercise of jurisdiction comports with the Fifth Amendment's Due Process guarantee. *See Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).

Count I of the Complaint alleges a violation of "Civil RICO – Wire and Mail Fraud" against all Defendants.   (Compl. at ¶ 56.)   RICO includes two provisions that arguably could create nationwide jurisdictional reach.   Title 18 U.S.C. §§ 1962, 1964.   First, subsection (b) of Section 1965, Venue and process, provides that "in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States."   Further, subsection (d) provides that "all other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."

In *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229–31 (10th Cir. 2006), the Tenth Circuit joined the Second, Seventh, and Ninth Circuits in holding that, pursuant to subsection (b), when a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be effected nationwide on other defendants if required by the ends of justice.   Thus, to determine whether jurisdiction is appropriate under RICO, the Court engages in a three step analysis: (1) whether personal jurisdiction can be established over one defendant; (2) whether the ends of justice require nationwide service; and (3) whether the exercise of jurisdiction comports with Due Process.   As to the second step, the Tenth Circuit has not provided a bright line rule for the "ends of justice"

analysis, rather noting that it is a "flexible concept uniquely tailored to the facts of each case." *Id.* at 1232.

Because Plaintiff has asserted a RICO claim against all of the defendants, if the RICO claim meets the three requirements delineated above, all defendants would be subject to the jurisdiction of this Court based on RICO.    However, the defendants bringing this motion have moved to dismiss the RICO claim for failure to state a claim.   If they succeed on their Motion to Dismiss regarding the RICO claim generally, *i.e.*, not only specifically as to them, then RICO would not provide a basis for personal jurisdiction. Accordingly, the Court first determines whether Plaintiff has sufficiently stated a RICO claim.   If it has, then the court may address whether nationwide jurisdiction is proper.

The RICO statute provides a private right of action for those injured by violations of section 1962.   18 U.S.C. § 1964(c).   To assert such a civil RICO claim, a plaintiff must demonstrate four elements: (i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity.   *See Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002).

Although the term "racketeering activity" appears last in the elements list for a civil RICO claim, there is no RICO claim without there first being racketeering activity.   Racketeering activity "is defined . . . as any 'act which is indictable' under federal law."   *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir.2006) (quoting 18 U.S.C. § 1961(1)(B)).   Plaintiff alleges that the racketeering activity in this case is mail fraud, a violation of Title 18 U.S.C. § 1341, and wire fraud, a violation of Title 18 U.S.C. § 1343.   Both mail fraud and wire fraud are punishable under

federal law by more than one year in prison and therefore either could satisfy the requirement of racketeering activity.   See 18 U.S.C. § 1961(1)(A).

Plaintiff has loosely and in a very disjointed fashion attempted to describe a fraud scheme wherein Steve Blackburn, by and through his companies, Fulfillment and New Epic, and with his partner, David Selakovic, entered into a business arrangement with Greenway under false pretenses for the real purpose of acquiring Greenway's trade secrets, including the identity of Greenway's supplier of the substance marketed as "No Powdery Mildew" in order to steal that supplier away from Greenway.   David Y.S. Park, Loo Kyung-Bon and Ecowin, the supplier of the powdery mildew preventative product, are alleged to be in the conspiracy to defraud Greenway with Blackburn and Selakovic by virtue of their agreement to allow Blackburn and Selakovic to become new suppliers of the product in the United States.[18]   Entities who may have "reengineered" Plaintiff's "No Spider Mites" product that was apparently provided to Fulfillment pursuant to the processing contract are alleged to be part of the scheme.   How the remaining defendants are connected to the alleged racketeering activity is not clear.

The mail fraud statute provides, in pertinent part,

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent

---

[18]   As noted, infra, the so-called "exclusive" contract between Ecowin and Greenway was not attached to the Complaint nor were any of the terms of the contract set forth as part of the Complaint.   Therefore, it is impossible to infer any breach of contract or interference with contractual arrangements.   Greenway only states in the complaint that "on information and belief, Ecowin had no other U.S. Distributors at the time the Greenway-Ecowin contract was executed." This phrase implies that exclusivity was not part of the actual contract.   Just because Greenway thought Ecowin had no other US distributors, does not mean that Ecowin was not eager and ready to acquire more distributors for its product should the right opportunity present.

pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, *for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service*, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341 (emphasis added).   As is evident, there must be an allegation of use of the mail

delivery system in order to sustain a claim of mail fraud.   The wire fraud section is similar

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, *transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds* for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Title 18 U.S.C. § 1343 (emphasis added).   In addition to the requirement of alleging the use of the

mails or the wires, the use of the mail and wires must be for the purpose of furthering the

fraudulent scheme.

Plaintiffs have not successfully alleged a scheme to commit fraud with respect to the

products which were being sold by Blackburn and Selakovic subsequent to November 2012.[19]

The factual allegations in the complaint are that Mr. Selakovic paid for the raw materials –

_____

[19] This is not to say that the facts alleged may not support elements of other claims in the Complaint; merely, that they do not support the allegation of a fraudulent scheme necessitated by any claim of mail or wire fraud.

presumably, although not specifically so stated, from Ecowin   with his own money in order to

help launch the agreement for processing between Fulfillment and Greenway (Compl. ¶ 34) and

that the products were shipped to Fulfillment for processing and therefore were, at that moment,

rightfully in Fulfillment's possession pursuant to the contract between Greenway and Fulfillment.

There is no allegation that Selakovic was repaid for his funding of the product purchase.   It can be

inferred from the facts alleged that Fulfillment did process and package the raw materials as

contracted.   (See Compl. ¶¶ 50, 54 and 55.)   The facts alleged in the Complaint confess to a

dispute between Blackburn and Greenway which occurred after that purchase which apparently

went unresolved.   Thereafter Selakovic and Steve Blackburn started selling off the processed

product inventory, which inferentially stood as collateral for the Selakovic loan for purchase, at

"liquidation" prices to third parties, most of whom had no alleged connection to Blackburn or

Selakovic or any of their companies.   *Id.*   While selling of the product may have been wrongful

and may support other claims in the case, a scheme involving fraud simply does not arise from the

facts alleged in the Complaint.

Moreover, the Complaint does not allege even one act of use of the mail, for any purpose,

much less to further a fraudulent scheme.   Therefore there are no predicate acts of mail fraud

alleged and therefore no pattern of racketeering activity concerning mail fraud.

The only possible allegations of use of wire transmissions comes in paragraphs 34 and 51 –

55 of the Complaint.   Three of the paragraphs allege that entities unrelated to the alleged scheme

are selling Greenway Nutrients' liquidated products on the internet.   These uses of wire

transmissions are not in furtherance of any scheme to steal Greenway's trade secret information. Paragraph 52 of the Complaint alleges that an undercover emissary from Greenway was instructed to wire transfer funds to Fulfillment for a product the emissary purchased from Vegalab, a company allegedly owned by Selakovic.   There is no allegation that any wire transfer actually was made or product thereafter delivered.   In paragraph 53 of the Complaint, it is alleged that Vegalab was selling a product obtained directly from Ecowin (not part of the "liquidated Greenway inventory") over the internet.   Paragraph 34 of the Complaint alleges that Selakovic paid for the Ecowin products with a "credit card" which could imply use of the wires; however the allegation is inadequately developed to support a claim of wire fraud and is not pleaded sufficiently pursuant to Fed. R. Civ. P. 9.[20]   Without allegations of use of the mails or wire, there can be no claim of mail or wire fraud.

Finally, a plaintiff must prove that a defendant engaged in at least two felony predicate acts to satisfy the "pattern" element of a RICO claim.   (See *id.* at 1267.); *Sky Harbor Air Service, Inc. v. Reams*, 491 Fed. Appx. 875, 887-888, 2012 WL 2948180, *10 (10th Cir. 2012).   The leading Supreme Court case addressing the enigmatic term "pattern of racketeering activity" is *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 250 (1989) (Scalia, J., concurring).   In *H.J. Inc.*, the Supreme Court was called on to explain how multiple predicate acts interact with each other, and with the activities of a RICO enterprise, so as to constitute a pattern of illegal activity.   After observing that Congress "had a fairly flexible concept of a pattern in mind," the Court found the

---

[20] Fed. R. Civ. P. 9(1)(b) provides that a party must plead allegation of fraud or mistake with particularity.

"term pattern itself requires the showing of a relationship between the predicates" and of "the threat of continuing activity," so that it is " continuity plus relationship which combines to produce a pattern." *Id*. at 239.   Conduct only forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.   *Id.* at 240. Additionally, while at least two acts are necessary to form a pattern, two acts may not be sufficient in and of themselves to support a RICO claim.   *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, (1985); *Smith v. Figa and Burns*, 69 Fed. Appx. 922, 925-926, 2003 WL 21465495, *3 (10th Cir. 2003)   Because there is only one tangential and inferential use the wires by Selakovic's alleged use of a credit card in furtherance of the alleged scheme to defraud, the Plaintiff has failed to allege a pattern of racketeering.

Plaintiff has failed to state a claim for civil RICO requiring that this court recommend the dismissal of Count I of the Complaint.   For the same reasons, Plaintiff's Count III, Conspiracy, also fails since the allegation involves "conspiracy to commit Federal racketeering activating (sic) arising under 18 U.S.C. § 1962(d)."[21]   The court also recommends the dismissal of Count III.

---

[21]   To establish a claim of civil conspiracy under Colorado law, "there must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.   *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo.1989).   Civil conspiracy is a derivative cause of action that is not independently actionable. *Double Oak Constr., L.L.C. v. Cornerstone Development Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003.)

With the demise of the RICO claims, Plaintiff must therefore establish independent personal jurisdiction over each Defendant in order to proceed.

### 2.   Due Process and Long Arm Jurisdiction

### a.   Steve Blackburn and Fulfillment

Plaintiff alleges that he entered into contracts with Defendants Steve Blackburn and Fulfillment, both of which are attached to the Complaint.   (Compl., Ex. 1 and 2.)   A defendant is not necessarily subject to personal jurisdiction in a forum state simply because he enters into a contract with a party that resides in that forum.   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)) (an individual's contract with an out-of-state party cannot automatically establish sufficient minimum contacts in that party's home forum); *SGI Air Holdings II LLC. v. Novartis Int'l, AG,* 192 F.Supp.2d 1195, 1202 (D. Colo. 2002) (same).   However, a contract may establish sufficient minimum contacts with the forum state where it has a "substantial connection" with that forum state.   *TH Agriculture & Nutrition*, 488 F.3d at 1288. Without substantial connection, there may be no personal jurisdiction even in cases where the defendant enters that forum state to discuss some of the details of the contract.   *See SGI Air Holdings II*, 192 F.Supp.2d at 1202.

Although Plaintiff claims that Greenway is a Colorado company, there is no factual allegation describing the Plaintiff's principal place of business.   However, two contracts, which are attached to the Complaint, Exs. 1 and 2, note that Greenway is a Colorado corporation having a principal place of business at 405 S. Platte River Dr., Denver, Colorado.   (Compl., Ex. 2 at 1.) The Complaint alleges that various Florida residents, under the guise of entering into a business relationship with Greenway, came to Greenway's offices and looked at all Greenway's records,

internet servers, products, and other accoutrements of the business in an effort to steal Greenway's

trade secrets.   Although the Complaint does not specify exactly where those offices are, it is fair

to consider that "the offices of Greenway" refer to 405 S. Platte River Dr., Denver, Colorado.

Further, the Fulfillment contract, (*id.*, Ex. 2) contains the following provision:

> 22.     Governing Law and Attorney Fees.   This Agreement shall be deemed to
> have been negotiated and executed in the State of Colorado, who shall have
> exclusive jurisdiction over this matter with venue in Denver, Colorado.   The laws
> of the State of Colorado shall govern this Agreement and all matters arising out of
> or otherwise relating to this Agreement.   The parties hereby submit to the personal
> jurisdiction of the state and federal courts of the State of Colorado."

(*Id.* at 3).   This agreement was signed by Steve Blackburn on behalf of Fulfillment Solutions

Services, LLC. and Gustavo Escamilla on behalf of Greenway Nutrients, Inc.   (*Id.*)   Likewise,

the non-disclosure agreement, attached to the Complaint at Ex. 1, contains the following language,

"This agreement shall be governed by, and construed and enforced in accordance with, the internal

laws of the State of Colorado applicable to agreements made and to be performed entirely therein

without giving effect to the conflicts of law's (sic) provisions thereof.   (*Id.* at ¶ 17.)   This

agreement is signed by Steve Blackburn as owner of New Epic Media and Gustavo Escamilla as

CEO of Greenway.

Therefore this court finds that Steve Blackburn and Fulfillment Solutions have waived

their right to contest specific personal jurisdiction in Colorado.   *Ins. Corp. of Ir., Ltd v.*

*Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703-04 (1982) (party may waive personal

jurisdiction by agreeing, via contract, to submit to the jurisdiction of a given court).   Further the

court finds that the Plaintiff has established the requisite minimum contacts with this state to allow

specific jurisdiction, that both these defendants could reasonably anticipate being haled into court

in Colorado if there was a dispute involving the subject of the two contracts and that, after

considering all the factors, jurisdiction in Colorado over Steve Blackburn and Fulfillment is

reasonable in light of all the circumstances of the case.

### b.     Stacy Blackburn

There are absolutely no factual allegations set forth against Stacy Blackburn whatsoever in

the Complaint other than that she was introduced to Greenway at some point in time.   (Compl. at

¶ 29.)   She is not a signatory on any contracts, she is not alleged to be a principal in any company

involved in the case, she is not alleged to have ever visited the state and she is not alleged to have

had any role whatsoever in any of the events set forth in the Complaint, even including Plaintiff's

naked allegations and conclusions.   Not only does the Complaint utterly fail to state any claim

against her, this court is also wholly without personal jurisdiction over her.   Therefore, the court

recommends Stacy Blackburn be dismissed from the case.

### c.     Supreme Growers, LLC

Defendant Supreme Growers, LLC is a Colorado corporation with its principal place of

business in Colorado.   Therefore, the court has both general and specific personal jurisdiction

over this entity.

### d.     Grower Trust, Dave Thompson and Hoops Enterprise, LLC

Defendants Grower Trust, LLC, Dave Thompson and Hoops Enterprise, LLC are not

alleged to have any presence in the state of Colorado, except perhaps through the internet.

Neither Grower Trust nor Dave Thompson nor Hoops Enterprise, LLC are alleged to have ever

appeared in this jurisdiction.   As noted, the complaint alleges at one time that Grower Trust is

owned by Steve Blackburn; however, in its public filings Grower Trust is said to have been founded and established on October 6, 2011 by Dave Thompson.   (Compl. at ¶ 52.)   Hoops Enterprise is alleged to be a Tennessee limited liability company.   (*Id.* at ¶ 17.)

Other than the assertion that Grower Trust was established by Dave Thompson, there are no allegations whatsoever against Dave Thompson.   The Plaintiff has utterly failed to state any claim whatsoever against Dave Thompson.   Clearly there is no personal jurisdiction in Colorado as to Dave Thompson.   Therefore, this court recommends that all claims against Dave Thompson be dismissed.

Grower Trust is alleged to be selling "its products" called "Spider Mite Killer" and "Powdery Mildew Killer" on the internet.   The Plaintiff makes the bare assertion, without any supporting facts, that these products are Greenway Nutrients property which has been "rebranded."   (Id at ¶ 51.)   Greenway alleges that "Hoops, dba Lookout Deals" is currently selling "No Spider Mites" and "No Powdery Mildew" in Greenway Nutrients labeled bottles in "old bottle sizes" through Amazon.   There is no allegation that Hoops Enterprise has any affiliation or connection with any other defendant in the case.   As noted, the burden is upon the Plaintiff, when personal jurisdiction is disputed, to establish a *prima facie* case for jurisdiction in this District.   It appears that Plaintiff relies only upon the fact that Grower Trust and Hoops Enterprise sell products on the internet to support its claim of jurisdiction.   As set forth more fully, *infra*, the Tenth Circuit is adamant that for the purposes of personal jurisdiction, Plaintiff must establish that Grower Trust and Hoops Enterprise intentionally directed their internet activity at Colorado, "rather than just having the activity or operation accessible there." *Shrader*, 633 F.3d at

1240.   Far from establishing intentional direction to Colorado by Grower Trust or Hoops Enterprise, the Plaintiff fails to allege that either Grower Trust's or Hoops Enterprise's internet presence even reached Colorado at all.   Therefore, this court finds that Plaintiff has failed in its responsibility to show that Grower Trust and Hoops Enterprise have sufficient minimum contacts with the state of Colorado such that either entity would anticipate being haled into this jurisdiction. It would be completely unreasonable, based on the facts contained in this Complaint, to exercise jurisdiction over these Defendants.   Further, there would be a substantial burden on Grower Trust, a Florida company, or on Hoops Enterprise, a Tennessee company, to appear in Colorado.   This state has virtually no interest in attempting to resolve the dispute with Grower Trust for whom sales in Colorado of the alleged "rebranded" products have not even been alleged nor with Hoops Enterprise, who is alleged to be selling Greenway products in bottle sizes that are not consistent with the scheme that is alleged in this case involving Blackburn and Fulfillment and for which no Colorado sales have been alleged.

Therefore, this court recommends that Grower Trust, LLC and Hoops Enterprise, LLC be dismissed from the litigation for lack of personal jurisdiction.

### e.       David Selakovic and Vegalab, LLC

There are several allegations that Steve Blackburn referred to David Selakovic as his "partner"; however, it is unknown what Selakovic may be a partner in, nor is there any factual averment that Selakovic ever demonstrated his agreement to the characterization.   There is no factual allegation that Selakovic entered into any partnership with Greenway, or indeed that Selakovic entered into any business relationship with Greenway at all other than to fund a purchase

28

of raw material at one point at the request of Steve Blackburn.   Neither Selakovic nor any business associated with him was a party to the Disclosure Agreement between New Epic and Greenway and there is no evidence that Mr. Selakovic even knew of the existence of such an Agreement or that any confidential material was provided to him.   When disputes arose between Blackburn and Greenway, Blackburn apparently suggested that the issues could be resolved by Mr. Selakovic "investing" in Greenway.   However, there is no evidence or allegation that Mr. Selakovic ever invested in Greenway or that he actually personally expressed such an interest. The only concrete factual allegation "against" Mr. Selakovic is that "Selakovic utilized his credit card for purchases of product."[22]   (*Id.* at ¶ 34.)

Plaintiff alleges that Vegalab was formed in January 2013 and that the registered agent for Vegalab is David Selakovic.   In February 2013, Greenway was told by Defendant Park at Ecowin that Vegalab was Ecowin's new exclusive distributor of its powdery mildew preventative product and that the product sold to Vegalab was the same substance which had previously been sold to Greenway.   After receiving that information, Greenway had someone contact Vegalab and that person spoke about the purchase of a product called "Mildew Control" from Vegalab.   (*Id.* at ¶ 52.)

The only facts relevant to Vegalab in the Complaint are that David Selakovic is the registered agent for the company, Vegalab may be using Fulfillment to process payments for its products, Vegalab became a distributor for Ecowin products, and that Vegalab was selling a

---

[22] In context, the court will infer for purposes of this order that the "product" referenced is either "No Powdery Mildew" from Ecowin or "No Spider Mites" from an unknown source, or both; however the Complaint is not clear on that issue.

product it called "Mildew Control" under its own label in February 2013, which, if that product is

the substance compounded by Ecowin, is the same substance that Greenway was marketing as "No

Powdery Mildew."   It is not alleged that Vegalab is selling any product on the internet; the only

allegation of internet use is that a third party, Gringo Diablo Hydro, is selling Greenway-labeled

products on the internet which Gringo Diablo Hydro claims it purchased from "Vega Labs" – an

entity which may or may not be the Defendant Vegalab.   (*Id.* at ¶ 54.)

      Again, it is Plaintiff's burden, when personal jurisdiction is disputed, to establish a prima

facie case for jurisdiction in this District.   Since there is no alleged internet use by either

Selakovic or Vegalab, jurisdiction based on internet sales is not applicable.   Therefore, the

Plaintiff must establish minimum contacts with Colorado pursuant to *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. at 286.   The Plaintiff has failed in that regard.   Neither Selakovic nor

Vegalab has been shown to have conducted any business with or in the state of Colorado.

Selakovic, presumably in Florida, is accused of paying to purchase products from a Korean

company which were ultimately shipped to Fulfillment in Florida pursuant to an agreement

between Fulfillment, Steve Blackburn, and Greenway to which Selakovic was not a party.

Vegalab is accused of selling a product which it paid for and obtained from a Korean Company.

The Complaint concedes that Vegalab had a contract to purchase the product it was receiving from

Ecowin, the Korean Company.   That contract was not alleged to have been executed in Colorado

nor subject to Colorado law.   Neither Selakovic or Vegalab purposefully directed any activity

whatsoever to residents of Colorado.   Therefore, neither could reasonably anticipate being haled

into Court in Colorado.    Therefore, this court recommends that all claims against David Selakovic and Vegalab, LLC be dismissed as this court lacks personal specific jurisdiction over either.

### C.      Failure to State a Claim Upon Which Relief Can be Granted.

Having found personal jurisdiction in this District only over Steve Blackburn, Fulfillment Solutions and Supreme Growers, the court must next analyze the remaining claims in which they are named pursuant to the requirements of Fed. R. Civ. P. 12(b)(6).

### Count II       Breach of Contract (Blackburn and Fulfillment)

To prevail on its claim for breach of contract against Steve Blackburn and Fulfillment, the Complaint must allege facts that would establish four elements: (i) existence of a contract; (ii) performance by Greenway; (iii) failure to perform by Mr. Blackburn and Fulfillment; and (iv) resulting damages.   *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Plaintiff has attached three contracts to its Complaint, without differentiation, and has alleged, "[d]efendants have breached their obligations to Greenway by: (1) disclosing confidential information provided by Greenway; (2) using confidential information for improper purposes; (3) directly competing with the operations of Greenway; ( 4) failing to deliver goods and services; and (5) failing to honor exclusivity provisions."

As to the alleged contract with Ecowin, the Plaintiff has failed to attach the contract to its complaint and has not made factual allegations as to the terms of the contract.   Since the court lacks jurisdiction over Ecowin and any of its principals, the court will not consider any claims for breach of the alleged Ecowin contract.

31

Federal Rule of Civil Procedure 8(a)(2) requires a pleader, in setting forth a claim for relief, to present "a short plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) provides, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on *a separate transaction* or occurrence   and each defense other than a denial   must be stated in a separate count or defense."   *Id.* (emphasis added.)

The plaintiff has wholly failed to compartmentalize the two contracts involving Blackburn (one on behalf of Fulfillment and one on behalf of un-served Defendant New Epic) so as to give the Defendants fair notice of what the claim is and the grounds upon which it rests.   The contracts involve different entities and appear to have been executed for different purposes – one was an agreement to share confidential material and the other to perform services incidental to the sale of Plaintiff's products.   One of the contracts has a mediation requirement while the other does not. There are no specific factual allegations concerning what confidential information was wrongfully disclosed and to whom it was disclosed.   Nor are there facts alleged supporting performance by Greenway.   The court is unable to determine which facts support which claims and several elements of the claim are wholly unsupported by factual allegations.

Therefore, the court finds that Plaintiff has failed to state a claim upon which relief can be granted for breach of contract in Count II, and therefore recommends that Count II be dismissed.

>>> ***Count IV       Fraud (All Defendants – Blackburn, Fulfillment, Supreme Growers)***

Fed. R. Civ. P. 9(b)provides

> (b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

*Id.*   The elements of fraud under Colorado law are:

> (1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it was false; (3) ignorance on the part of the one to whom the representation was made of its falsity; (4) the representation was made with an intention that it be acted on; and (5) the representation resulted in damage."

*Bangert Bros. Const. Co., Inc. v. Kiewit Western Co.*, 310 F.3d 1278, 1286 n.4 (10th Cir. 2002)

(quoting *Southeastern Colo. Water Conservancy Dist. v. Cache Creek Mining Trust*, 854 P.2d 167,

172 (Colo. 1993)).

The only potential false representation of a material fact found in the Complaint as to

Blackburn and Fulfillment appears in paragraph 32 of the Complaint, which reads

> 32.     Fulfillment represented to Greenway that it had sufficient expertise in filling bottles, labeling, shipping, customer service and sales. It further represented that it had an online platform for ordering and billing. *Greenway was unaware that Fulfillment did not have any expertise in filling bottles, shipping, labeling, back office operations and sales.* Nor was Greenway aware that this was a clever scheme devised by Defendants to obtain Greenway's trade secrets, source product manufacturers, distributors, and customers in a conspiracy to use them to eliminate Greenway as a competitor.

(Compl. ¶ 32.)   The last sentence of the paragraph is clearly conclusory and not entitled to

be considered as a factual statement to be taken as true.   The second sentence, while less

than skillfully drafted, appears to allege   taken in the light most favorable to the plaintiff -
 that Fulfillment did not have the expertise it touted nor did it have a platform for ordering
and billing.   Further, the paragraph infers that Greenway did not know that Fulfillment's
statements about its expertise and facilities were false.   Greenway alleges in paragraph 31
of the Complaint that he entered into the relationship with Fulfillment and Blackburn
"under the guise of a potential business transaction and investment relationship and in
order to obtain fulfillment services . . . ."   (*Id.* at ¶ 31.)   This allegation satisfies the
element of intent on the part of Fulfillment and Blackburn that the alleged false or
fraudulent statement be relied upon by Greenway.   Beyond that, however, the claim fails
to meet the particularity requirements of Rule 9 and fails to specify what damages inured to
Plaintiff *as a result of the alleged misstatement.*

Plaintiff was not required to open its business records to Fulfullment and Blackburn
as a result of Fulfillment's alleged inability to perform under the contract Greenway
entered into with Fulfillment.   According to the Complaint, Plaintiff opened up its
business records in order to entice Blackburn's alleged partner, Selakovic, to actually
purchase the raw materials that Fulfillment was supposed to process and market.   The
Complaint alleges that Selakovic, not Greenway, purchased the product that was sent to
Fulfillment to process.   (*Id.* at ¶ 34.)   If Greenway was unable to purchase product, there
would be nothing for Fulfillment to process, whether it actually did or did not have the
alleged expertise to do so.   According to the Complaint, however, after Selakovic's
purchase of the substance from Ecowin, Fulfillment did process the raw product with

34

Greenway labeling as contracted.   (*Id.* at ¶¶ 48, 49, 50, 54 and 55.)   Since, experienced or not, Fulfillment did actually perform as promised, any misrepresentation alleged was not material.

Therefore, not only does Count IV fail to set forth facts supporting each of the elements of the claim of fraud, it also does not comply with the particularized filing requirements of Fed. R. of Civ. P. 9 as to Blackburn and Fulfillment.   Accordingly, the court recommends that Count IV be dismissed against Defendants Blackburn and Fulfillment.

The only misrepresentation the Complaint attributes to Supreme Growers appears in paragraph 50 with the double hearsay statement, "Halk [alleged owner of Supreme Growers] misrepresented that Supreme Growers' corporate offices are located in Fort Collins, Colorado, but all of our Greenway liquidation is currently in West Palm Beach, Florida."   (Compl. at ¶ 50.)   Greenway then states, "[a]lthough Blackburn, Selakovic and Fulfillment Solutions were located in West Palm Beach Florida, Greenway was not."   *Id.* This statement, attributed to Supreme Growers, does not provide any allegation or even inference that Halk's purported statement was in any way false.   And even if the statement was false, it is immaterial.   Where the product was located was not offered as an inducement to anyone for anything.

The court finds that the Plaintiff has failed to state a claim for which relief can be granted against Supreme Growers, that any claim against Supreme Growers fails to meet

the requirements of Fed. R. Civ. P. 8, 9 and 11.   Therefore, the court recommends that

Count IV be dismissed against Defendant Supreme Growers.

> ### Counts VI, VII, VIII, IX, and X -- Trademark Infringement (15 U.S.C. §1114), False Designation of Origin/Unfair Competition (15 U.S.C. § 1125), Unfair Competition (common law), Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-105) and Colorado Unfair Practices Act (Colo. Rev. Stat. § 6-2-101)

Trademark infringement is a type of unfair competition; the two claims have virtually

identical elements and are properly addressed together as an action brought under the Lanham Act.

*Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045,

1050 (10th Cir. 2008).   *See also Donchez v. Coors Brewing Co*., 392 F.3d 1211, 1219 (10th Cir.

2004); *cf. Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992); *Heaton Distrib. Co. v.

Union Tank Car Co*., 387 F.2d 477 (8th Cir.1967) ("Trademark infringement is but a part of the

broader law of unfair competition, and facts supporting a suit for infringement and one for unfair

competition are substantially identical.")

Title 15 U.S.C. § 1114 provides:

(1) Any person who shall, without the consent of the registrant—
    (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
    (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

*Id.*

36

Title 15 U.S.C. § 1125(a) provides

> (a) Civil action
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id.* "[I]n order to establish trademark infringement, a plaintiff must prove the validity of the mark it seeks to protect and must also prove that the use of a similar mark by defendant is 'likely to cause confusion in the market place concerning the source of the different products.' " *USA Network v. Gannett Co.*, 584 F. Supp. 195, 198 (D. Colo. 1984) (*quoting Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983)).   "An unfair competition claim requires a plaintiff to establish that (1) the mark/name is protectable, and (2) that defendants' use of an identical or similar mark will likely cause confusion among consumers."   *Greenway Univ., Inc. v. Greenway of Arizona, LLC*, 2012 WL 1801948, at *7 (D. Colo. May 17, 2012) (*citing Donchez*, 392 F.3d at 1215.

To determine whether a likelihood of confusion exists, courts examine six non-exhaustive factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of

37

marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1138 (10th Cir.2008) (internal quotations omitted). "The party alleging infringement has the burden of proving likelihood of confusion." *Id.*; *see KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004). This "likelihood of confusion" test is applicable not only to Greenway's trademark infringement claims, but also to its claim of false designation of origin, 15 U.S.C. § 1125, and its common law claims of unfair competition and deceptive trade practices. *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir. 1984)

To constitute unfair competition in respect to a trade name, Colorado courts have stated two elements must be present. First, the name must have acquired a secondary meaning or significance that identifies the plaintiff. 'Secondary meaning' is defined as 'the consuming public's understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify.' " *HealthONE of Denver, Inc. v. UnitedHealth Group Inc.*, 805 F.Supp.2d 1115, 1124 (D. Colo. 2011). Second, the defendants must have unfairly used the name or a simulation of it against the plaintiff. *Swart v. Mid-Continent Refrigerator Co.*, 360 P.2d 440, 442 - 443 (Colo. 1961) (*citing McGraw Hill Publishing Company, Inc. v. American Aviation Associates, Inc.*, 117 F.2d 293, 296 (D.C. Cir. 1940). *See also American Furniture Co. v. American Furniture Co.*, 251 P.2d 163 (Colo. 1953). Ultimately, the universal test for unfair use is whether the public is likely to be deceived. *Gregg Homes, Inc. v. Gregg & Co. Builders, Inc.*, 978 P.2d 146, 148 (Colo. App. 1998).

To prevail on an unfair trade practices claim under the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq*., a plaintiff must prove the following elements: (1) the defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.   *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).   *See Video Professor, Inc. v. Amazon.com, Inc.*, Case No. 09-cv-00636-REB-KLM, 2010 WL 1644630, at *4 (D. Colo. Apr. 21, 2010).

In a disjointed narrative, Plaintiff alleges that subsequent to the disagreement between Greenway and Blackburn, at some point after November 2012, Blackburn and Fulfillment began selling a product named "Spider Mite Killer" under the Greenway Nutrients' mark or label which had been reverse engineered from Greenway's original product "No Spider Mites."   Greenway also alleges that in November 2012, Steve Blackburn offered to sell to a third party Greenway Nutrients marked "No Spider Mites" and No Powdery Mildew" at greatly reduced prices, informing the buyer that Blackburn had funded the development of the Greenway Nutrients product line and that two or more companies, Gringo Diablo Hydro and Hoops d/b/a/ Lookout Deals are selling Greenway Nutrients marked "No Spider Mites" and "No Powdery Mildew" on the internet.   Finally, Greenway alleges Grower Trust was selling Greenway Nutrients marked "No Spider Mites" and No Powdery Mildew" under the ***rebranded names*** of "Spider Mite Killer" and "Powdery Mildew Killer" on the internet.   (*Id.* at ¶ 51.)   It is unclear from the Complaint

whether "Spider Mite Killer" and "Powdery Mildew Killer" were allegedly being sold with a label stating it is a product of Greenway Nutrients or whether the allegation of 'rebranding' means that the two products are being sold under the label of a new or different distributor.

One of the primary pitfalls of complaints structured in the shotgun fashion used by Plaintiff in this case, is that neither the parties nor the court can positively connect alleged facts to the claims asserted.   Within the paragraph above, the court has identified at least four separate categories of allegations concerning the claimed unauthorized use of Plaintiff's marks: (1) instances where the Plaintiff alleges that Defendants possessed Greenway products, bearing Greenway Nutrients' mark, which they were unlawfully offering for sale without remuneration to Greenway; (2) instances where the Plaintiff alleges that Defendants were selling substances that bore the Greenway Nutrients mark or label but where the substance inside the packaging was not the Greenway product, i.e. the substance in the packaging had been "reverse engineered"; (3) an instance where a defendant was selling substances under a different brand name (or mark) that either had been reverse engineered from a former Greenway product or was the Ecowin product Greenway marketed under the name "No Powdery Mildew," but was now being offered for sale as "Powdery Mildew Killer"; and 4) possible public confusion over the sale of products with similar names to Greenway's alleged "common law" trademarks of "No Powdery Mildew" and "No Spider Mites."   The complaint does not differentiate or separate the different kinds of factual allegations into which facts are alleged to support which claims.

This court finds that Counts VI, VII, VIII, IX, and X constitute illegally pleaded shotgun claims.   Pleading the claims in such a fashion has wrongfully placed "an

40

inordinate burden on the party responding to that pleading, and on the Court interpreting it,

requiring them to parse the narrative repeatedly and attempt to independently extract the

particular factual averments that are relevant to each individual claim" as decried by

District Judge Arguello in *Jacobs v. Credit Suisse First Boston*, Case No.

11-cv-00042-CMA-KLM, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011).

Therefore, this court finds that as to Counts VI, VII, VIII, IX, and X, Plaintiff has

failed to state claims upon which relief may be granted and that these counts should be

dismissed.

### *Count V -- Unjust Enrichment (All Defendants[23] – Blackburn, Fulfillment, Supreme Growers)*

The elements of the claim of unjust enrichment are:

> (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the
> benefit by the defendant; and (3) circumstances which make it inequitable for the
> defendant to retain the benefit.  *See Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779,
> 780 (Colo. 1967)

*Cargill, Inc. v. Stafford*, 553 F.2d 1222, 1224 (10th Cir. 1977).   The principle underlying a claim

of unjust enrichment is to deprive a wrongdoer of benefits that in equity and good conscience he

ought not to keep.   *Scanwell Laboratories, Inc. v. Thomas*, 521 F.2d 941, 949 (D.C.Cir. 1975).

If the plaintiff "did not perform any services for, convey any rights to, or confer any benefit on" the

defendant, a plaintiff ordinarily cannot recover under a theory of unjust enrichment.   *Cargill*, 553

F.2d at 1224; *Federal Deposit Ins. Corp. v. British-American Corp.*, 755 F. Supp. 1314, 1324

---

[23]  The Complaint does not state "Against all Defendants" in this count; however,
paragraph 82 begins, "Defendants, and each of them, . . . " from which the court infers the count is
alleged against all defendants.

(E.D.N.C. 1991)   In short, under Colorado law, a plaintiff must allege that at the plaintiff's expense, defendants received a benefit under circumstances that would make it unjust for defendants not to make restitution.   *Van Zanen v. Qwest Wireless, LLC*, 550 F. Supp. 2d 1261, 1266 (D. Colo. 2007) (citing *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998)).   Equitable remedies normally are available only when the remedy at law is inadequate.   *Tyler v. City of Manhattan*, 118 F.3d 1400, 1416 (10th Cir. 1997).

In the Complaint, Greenway alleges

82. Defendants, and each of them, have gained substantial benefit from the information and goods improperly obtained from Greenway through the acts described herein. Defendants have used these advantages to the exclusion of Greenway and to unfairly compete with Greenway's business activities.

83. Greenway has been substantially harmed by both the loss of goods and services promised to Greenway as well as from the improper competition against its legitimate business operations.

(Compl. ¶¶ 82-83.)

When an express contract applies between parties to litigation, Colorado law provides that an unjust enrichment claim that covers the same subject matter is prohibited, as a matter of law, because the express contract precludes any implied-in-law contract. In *Interbank Investments, LLC v. Eagle River Water and Sanitation Distr.*, 77 P.3d 814, 816 (Colo. App. 2003), the Colorado Court of Appeals stated that "[i]n general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Id.; see also Echostar Satellite, L.L.C. v. Splash Media Partners, L.P.*, 2010 WL 3873282 (D. Colo. 2010) (unpublished) (entering summary judgment in favor of the

defendant because there was an express contract covering the same subject matter as the unjust enrichment claim).   However, the principle that an express contract precludes an unjust enrichment claim may be limited in applicability to the case in which such claims are alternatively pled.   *MidCities Metropolitan Dist. No. 1 v. U.S. Bank Nat. Assn*, Case No. 12-cv-03322-LTB, 2013 WL 3200088, at *8 (D. Colo. June 24, 2013).   Further, a party can recover on a quasi-contract when it covers conduct outside the express contract or matters arising subsequent to the express contract and a party can recover on a quasi-contract when the party will have no right under an enforceable contract.   *Id*.

There was an express contract covering any claim for loss of goods and services between Greenway, Blackburn and Fulfillment.   Therefore, an unjust enrichment claim for goods or services is precluded.

To support its equitable claim of unjust enrichment outside the parameters of the express contracts, Plaintiff claims that the benefit of knowledge about Plaintiff's suppliers and other trade secrets was conferred on Defendants Blackburn and Fulfillment under circumstances which allowed Blackburn and Fulfillment to profit at Greenway's expense. (Compl. ¶ ¶ 34-38.)   Plaintiff seeks an injunction from this court prohibiting Blackburn and Fulfillment from using the information obtained from Greenway, presumably including a prohibition to prevent the two Defendants from contracting with Ecowin to supply the powdery mildew prevention product.   (*Id.* at ¶ 84.)

Although the complaint is sparse in specific factual allegations in support of its claim for unjust enrichment, this court concludes that it is sufficient—when the allegations

are viewed as true and in favor of Greenway—to allege a plausible claim for relief with respect to the knowledge and information Greenway provided to Blackburn and Fulfillment.   As previously noted, Greenway alleges that Blackburn and Fulfillment defrauded Greenway into providing them with his trade secret information, including the identity of the manufacturer developed by Greenway of the powdery mildew preventative under the false pretenses that the two defendants working with Greenway to help Greenway package and market its products.   Greenway alleges that instead Blackburn took the information received from Greenway and used it to foster a relationship with Ecowin to the detriment of Greenway, who was ultimately cut off from his former supplier. Greenway alleges that Blackburn, through his associates and companies, after surreptitiously gaining exclusive U. S. distribution rights to the Ecowin product, is now selling the product to others, presumably for a profit.   Thus, this court concludes that Greenway has adequately pled a cognizable unjust enrichment claim precluding dismissal of Count V of its complaint as to Defendants Blackburn and Fulfillment.

The same is not true of Supreme Growers, however.   The only allegation in the Complaint against Supreme Growers came as hearsay from a non-party that Supreme Growers had obtained Greenway Nutrients 'stock' that Supreme Growers characterized as "liquidation" inventory it presumably purchased and which it was selling to another retail outlet.   (*Id.* at ¶ 50)   Further the Complaint makes the bald allegation that Blackburn and Fulfillment were selling Greenway's stock of No Spider Mites "by way of shell

44

corporations[24] such as Supreme Growers." (*Id.* at 48.)   The court concludes that the factual allegations contained in the Complaint are insufficient to support a plausible claim against Supreme Growers for unjust enrichment.   Therefore, the court recommends that Count V be dismissed as against Supreme Growers.

####    D.       *Supplemental Jurisdiction*

Title 28 U.S.C. § 1367(a) prescribes that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . ."   As originally filed, the Plaintiff invoked jurisdiction "pursuant to 18 U.S.C. § 1964(a), 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) & (b) (compl. at ¶ 2) and stated that the state law claims were "joined with, and substantially related to, the federal question claims . . . ."   (*Id.* at ¶ 3.)   If this court's recommendation is accepted, the only claim remaining in this case will be one for unjust enrichment, an equitable state law claim, against two defendants.   A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law . . . ."   *Grable & Sons Metal Prods., Inc. v. Darue*, 545 U.S. 308, 312 (2005).   The state law claim of unjust enrichment presented here does not turn on questions of federal law.

Further, once alerted that a Complaint is deficient by the filing of a motion to dismiss, a Plaintiff may, upon proper motion and order, file an amended complaint in an attempt to fix its pleading errors.   Once judgment of dismissal enters, however, the filing of an amended complaint

---

[24] The Complaint does not contain any factual support for calling Supreme Growers a shell company, and in fact Supreme Growers is alleged elsewhere in the Complaint to be a for-profit Colorado, not Florida, corporation owned by an unrelated party, James Halk.   (Compl. at ¶¶ 16, 20.)

is not permissible unless the final judgment is set aside or vacated.   *See Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir.2005); *Builder MT LLC v. Zybertech Const. Software Services, Ltd.*, Case No. 08-cv-00435-LTB, 2008 WL 5246166, *3 (D. Colo. Dec. 16, 2008). This case is pre-judgment.   Therefore, the District Court could allow Plaintiff to attempt to cure its pleading deficiencies by an Amended Complaint upon the filing of a proper motion,[25] setting forth good cause why the Motion to Amend was not filed on or before the date set by the court in the Scheduling Order of September 30, 2013 (see Scheduling Order [Doc. No. 84] at § 9(a))[26] and a finding that the amendment serves a legitimate purpose and would not be futile.   *See Schwartz v. Booker*, Case No. 09-cv-00915-WJM-KMT, 2011 WL 2560016, *2 (D. Colo. June 28, 2011).

If the District Court does not allow the filing of an Amended Complaint, however, this court recommends that the court decline to exercise its jurisdiction over Count V and dismiss Count V without prejudice.   Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right."   *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).   "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."   *Carnegie–Mellon Univ.*,

---

[25] Plaintiff's request as part of its response to allow it to file an Amended Complaint violates D.C.COLO.LCivR. 7.1(C) and will not be considered.

[26] Plaintiff has not yet established good cause to extend the deadline within which he may seek leave to amend the complaint.   *See Ankeney v. Creany*, Case No. 09-cv-2085-WJM-MJW, 2011 WL 7094380, *16 (D. Colo. June 30, 2011).

484 U.S. 343, 350 (1988).   If federal claims are dismissed before trial, leaving only issues of state

law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by

dismissing the case without prejudice.   *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010)

(citing *Carnegie–Mellon Univ.*, *id*).

WHEREFORE, for the foregoing reasons, the court

**RECOMMENDS** that

1.     Defendants Steve Blackburn, Stacy Blackburn, David Selakovic, Fulfillment

Solutions Services, LLC, Vegalab, LLC, Grower Trust, LLC, and Dave Thompson's Motion to

Dismiss [Doc. No. 27] be **GRANTED;**

2.     Defendant Supreme Growers, LLC's "Motion to Dismiss Adopting Prior Motion

(D.E. 27)" [Doc. No. 68] be **GRANTED;**

3.     "Motion to Dismiss on Behalf of Defendant Hoops Enterprises, LLC" [Doc. No.

97] be **GRANTED;**

and that the case be dismissed in its entirety.


**ADVISEMENT TO THE PARTIES**

**Within fourteen days after service of a copy of the Recommendation**, any party may

serve and file written objections to the Magistrate Judge's proposed findings and recommendations

with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general

objection that does not put the district court on notice of the basis for the objection will not

preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);   *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but*

*see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 10th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge