IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01088–MSK –KMT

GREENWAY NUTRIENTS, INC.,

     Plaintiff,

v.

STEVE BLACKBURN,
DAVID SELAKOVIC,
FULFILLMENT SOLUTIONS SERVICES, LLC,
SUPREME GROWERS, LLC,

     Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

     Gus Escamilla, owner of Plaintiff Greenway Nutrients, Inc. ("Greenway"), seeking to capitalize on the burgeoning marijuana growing business, developed sources for a number of products designed to enhance vegetation growth.   In an effort to obtain funding for his business and to package and bring his products to market, Escamilla entered into a business relationship with Defendant Fulfillment Solutions Services ("FSS") and its owner, Defendant Steve Blackburn. Through Mr. Blackburn, Mr. Escamilla also became associated with Defendant David Selakovic. Discord, however, soon began and while a batch of Greenway's botanical products was being processed in Florida at FSS, and the relationship went to pot, so to speak.   This case is the result.

### PROCEDURAL HISTORY

Greenway filed its original Complaint on April 23, 2013 against Defendants Steve Blackburn, Stacy Blackburn, David Selakovic, Fulfillment Solutions Services, LLC, Vegalab, LLC, Grower Trust, LLC, Dave Thompson Supreme Growers, LLC and Hoops Enterprises, LLC.[1] [Doc. No. 2.]   Motions to dismiss soon followed arguing, *inter alia*, that the Complaint represented a prohibited "shotgun" pleading in violation of Fed. R. Civ. P. 8, that the court lacked personal jurisdiction over most of the out-of-state defendants, and that Greenway failed to state any claims upon which relief could be granted.   Upon review, this court found there was no properly- alleged violation of RICO, nor had Greenway properly alleged a conspiracy based on RICO, and that outcome led to findings of lack of personal jurisdiction over a number of the original defendants.   Ultimately, personal jurisdiction was found only over Steve Blackburn, FSS and Supreme Growers.   This court went on to find that Plaintiff had failed to state viable claims against the three defendants with but one exception[2] and recommended that all defendants' motions be granted and that the Complaint be dismissed in its entirety.   [Doc. No. 99]

Greenway filed timely objections to the Recommendation on February 24, 2014 [Doc. No. 100] accompanied by its "Motion for Leave to File First Amended Complaint" [Doc. No. 101]. The District Court adopted the Recommendation (Order of Chief Judge Marcia S. Krieger dated March 26, 2014 [Doc. No. 106] hereinafter "MSK Order") and granted Greenway's motion to file an amended complaint in part.

---

[1] A Recommendation of dismissal for a number of defendants in the original complaint who had not been served with process was separately entered.   [Doc. No. 104.]

[2] This court found a viable claim had been stated against Blackburn and FSS for unjust enrichment, however recommended the district court decline to exercise supplemental jurisdiction.   (Rec. at 44.)

The "First Amended Complaint for Injunctive Relief, Damages, and Jury Demand" [Doc. No. 107] ("Am. Compl."), filed on April 9, 2014, brings claims against only four of the original defendants: Steve Blackburn, FSS, David Selakovic and Supreme Growers LLC.   Plaintiff asserts claims against Steve Blackburn and FSS for breach of contract (Ct. I), against David Selakovic for breach of contract (Ct. II), against Blackburn, FSS and Selakovic for unjust enrichment (Ct. III), and against all defendants for trademark infringement (Ct. IV) and false designation of origin (Ct. V).

Defendants filed their "Motion to Dismiss First Amended Complaint" [Doc. No. 109] on April 23, 2014, with separately filed Exhibits [Doc. No. 110] ("Mot.Exhibits").   Greenway filed its "Opposition to Motion to Dismiss First Amended Complaint" [Doc. No. 112] on May 7, 2014 and Defendants filed their "Reply to Plaintiff's 'Opposition to Motion to Dismiss First Amended Complaint'" [Doc. No. 113] on May 15, 2014.   The motion is ripe for review and recommendation.

### *ANALYSIS*

### *I.     Jurisdiction*

The plaintiff bears the burden of establishing personal jurisdiction over the defendants. *See Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir.1995).   When considering a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(1) and (2), the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment.   *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).   Where a party challenges the facts upon which jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may

3

even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts . . . ."   *Id.*   It is also permissible for the court to accept as true those facts presented in the defendants' affidavits that remain unrefuted by the plaintniff.   *Behagen v. Amateur Basketball Assn of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984).   However, even though documents outside the pleadings may be considered, all disputed facts and all reasonable inferences must be drawn in the plaintiff's favor.

A court is required to convert a Rule 12(b)(1) or (2) motion to dismiss into a summary judgment motion "when resolution of the jurisdictional question is intertwined with the merits of the case."   *Paper, Allied-Industrial, Chemical And Energy Workers Intern. Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005).   "[T]he underlying issue [in determining whether the jurisdictional question is intertwined with the merits] is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."   *Id. quoting Pringle v. United States,* 208 F.3d 1220, 1223 (10th Cir. 2000).

When the issue of the court's jurisdiction is raised before trial and decided on the basis of affidavits and other written materials, the burden on the plaintiff is light, requiring only a *prima facie* showing of proper jurisdiction.   *Wise v. Lindamood*, 89 F. Supp.2d 1187, 1189(D. Colo. 1999); *McIntosh v. Lappin*, Case No. 11-cv-01150-PAB-CBS, 2012 WL 4442766, *10 (D. Colo. August 13, 2012).   *See also Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir.1995).

## A.   Venue

Defendants argue that because Greenway is no longer located in Colorado, this court lacks jurisdiction.   The plaintiff unfortunately conflates jurisdiction with venue.   Jurisdictional questions concern themselves with the power of a court to adjudicate the rights and liabilities of a party, while venue focuses on the most convenient location for litigation.

Venue for an action in federal court is controlled by 28 U.S.C. § 1391(d) which has nothing whatever to do with acquiring personal jurisdiction by service of process.   *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 464 (5th Cir.1971). Title 28 U.S.C. § 1391(b) specifically provides

> (b) **Venue in general**.--A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id*.   There is no dispute that Greenway at all relevant times has been incorporated in the state of Colorado and is listed as a company "in good standing."   (Mot. at 12.)

In addition to the normal venue provisions, at least one of the Contracts attached to the Amended Complaint contains a forum selection clause, providing

> This Agreement shall be deemed to have been **negotiated** and **executed** in the State of Colorado, who shall have exclusive jurisdiction over this matter with venue in Denver, Colorado. . . . The parties[3] hereby submit to the personal jurisdiction of the state and **federal** courts of the State of Colorado.

(Am.Compl., Ex. 2 [contract between Greenway Nutrients and Fulfillment Solutions Services dated 6-21-2011 (hereinafter "Fulfillment Agreement"] ¶ 22)(emphasis added).   When the parties began their alleged business relationship, Colorado was the situs for the negotiations

---

[3]  The parties to this contract were Greenway Nutrients by agent Gus Escamilla and FSS by agent Steve Blackburn.

and the contract executions.   In addressing appropriate venue, the Supreme Court has recently given its approval to forum selection clauses, stating, "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine Construction Co. v. U.S. Dist. Ct. for the W Dist. of Tex.*, --- U.S. ----, 134 S. Ct. 568, 581 (2013).

This court finds that venue is therefore proper in the federal court for the District of Colorado and Plaintiff's current presence or absence in this jurisdiction is irrelevant for the purpose of a jurisdictional analysis.

### B.    *Personal Jurisdiction*

When considering Greenway's motion to file an amended complaint, Chief Judge Krieger found that personal jurisdiction had been established over David Selakovic sufficiently in the proposed First Amended Complaint to determine that the amendment was not futile pursuant to Fed. R. Civ. P. 15.   (MSK Order at 9-10.)   Nonetheless, Defendants urge that personal jurisdiction over all defendants is lacking when considered under a Rule 12(b)(2) analysis.

Federal courts are courts of limited jurisdiction, available to exercise their power only when specifically authorized to do so.   *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir.2007).   For this court to exercise personal jurisdiction over a defendant, there must be both a showing that (i) jurisdiction is proper under the laws of Colorado, and (ii) the exercise of jurisdiction does not offend the Due Process clause of the Fourteenth Amendment.   *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).

Colorado's long arm statute is coextensive with the constitutional limitations imposed by the Due Process clause; therefore, the jurisdictional inquiry collapses into the single determination

of whether jurisdiction is consistent with the Due Process clause.   *See id.*   The Due Process

clause requires a non-resident defendant to have "minimum contacts" with the forum state.   *See*

*OMI Holdings, Inc.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *World-Wide Volkswagen*

*Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).   The "minimum contacts" standard may be met by

showing either general or specific jurisdiction over the defendant.   *Id.*

A court may exercise general jurisdiction over a defendant for any claim, whether arising

from activities in the state or not, if the defendant has sufficiently strong business contacts with the

forum state.   General personal jurisdiction over a party permits the forum to resolve any dispute

involving that party, not just the dispute arising from the parties' minimum contacts with the

forum.   *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984);

*Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).   Supreme Growers is a Colorado

corporation with its principal place of business in Colorado, giving rise to general jurisdiction by

Colorado courts.   Defendants therefore do not argue lack of personal jurisdiction over this

defendant.

Alternatively, a court may exercise specific jurisdiction over a defendant if the defendant's

actions in or directed at the forum give rise to the litigation.   The specific personal jurisdiction test

is two-pronged, with interplay between the two prongs.   *OMI Holdings, Inc.*, 149 F.3d at1091.

Under the first prong, a court decides whether the defendant has sufficient minimum contacts with

the forum state such that he should "reasonably anticipate being haled into court there."   *World–*

*Wide Volkswagen*, 444 U.S. at 297,   This inquiry requires a determination of whether the

defendant "purposefully directed" its activities at residents of the forum and whether the action

"arises out of or relates to" the defendant's own activities within the state and creates a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

The second prong of the specific jurisdiction analysis is whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987). This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007). The test evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction. *OMI Holdings, Inc.*, 149 F.3d at 1092.

## 1. Steve Blackburn and FSS

This court undertook a thorough analysis of personal jurisdiction over Steve Blackburn and FSS in its initial Recommendation. Two purported contracts which were attached to the original Complaint noted that Greenway had its principal place of business at 405 S. Platte River Dr., Denver, Colorado and Greenway has maintained that Blackburn physically appeared at its offices

"to conduct due diligence in furtherance of their planned investment."[4]   (Am.Compl. ¶ 24.)

Greenway has, however, attached different contracts in support of its Amended Complaint.   Now

only the Fulfillment Agreement alleges that Greenway's location was 405 S. Platte River Dr.,

Denver, Colorado.

As noted in Section I(A), the Fulfillment Agreement contains a forum selection clause with

the specific provision that the parties "submit to the personal jurisdiction of the state and federal

courts of the State of Colorado."   (Am.Compl., Ex. 2 at ¶ 22.)   Although not technically a party to

the agreement, Steve Blackburn signed the contract on behalf of Fulfillment Solutions Services,

LLC indicating his agreement with the phrase in paragraph 22, "This Agreement shall be deemed

to have been negotiated and executed in the State of Colorado, . . . ."   (*Id.* at ¶ 17.)   Recognition

of this forum-selection clause does not offend traditional notions of fair play and substantial

justice; rather, it honors the expressed wishes of all parties to the contract.

Therefore this court continues to find that Steve Blackburn and FSS have waived their right

to contest specific personal jurisdiction in Colorado with respect to their related business dealings.

*Ins. Corp. of Ir., Ltd v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703-04 (1982) (party

may waive personal jurisdiction by agreeing, via contract, to submit to the jurisdiction of a given

court).   Further the court finds that Greenway has established the requisite minimum contacts

with this state to allow specific jurisdiction and finds that both these defendants could reasonably

anticipate being haled into court in Colorado if there was a dispute involving the subject matter of

the Fulfillment Agreement.   Greenway is a Colorado corporation in good standing, so jurisdiction

---

[4]  It is unclear whether this visit took place before or after the signing of the Fulfillment
Agreement.

in this state is consistent with this state's interests and the burden of proceeding in Colorado was accepted by Blackburn and FSS as part of their business arrangement with Greenway.

After considering all the factors, jurisdiction in Colorado over Steve Blackburn and FSS is reasonable in light of all the circumstances of the case.

### 2.    *David Selakovic*

The Amended Complaint, for the first time, brings forth a Non-Disclosure Agreement which Greenway alleges was executed by Defendant Selakovic on June 22, 2012.   (Am.Compl., Ex. 3, hereinafter "Selakovic N/D Agreement").   Mr. Selakovic, via a sworn Affidavit, claims the Selakovic N/D Agreement is a forgery.   (Mot.Exhibits, Ex. A, Affidavit of David Selakovic.) Gus Escamilla filed his own Affidavit, in response to the forgery allegations, stating that he found the executed Selakovic N/D Agreement in the desk of his former employee, Debbie Trudeau, after she left the company.   (Mot.Exhibits, Ex. H.)   Ms. Trudeau, in her Affidavit, swears that, "[a]t no time while working at Greenway Nutrients from October 2010 to December 26, 2012 have I seen a signed Non Disclosure Agreement by David Selakovic and did not have this document in any of my files."   (Mot.Exhibits, Ex. I.)

As Chief Judge Krieger stated in *B & R Plastics, Inc. v. Whitney Design, Inc.,* Case No. 08-cv-00914- MSK-MJW, 2009 WL 230706, *2 (D. Colo. Jan. 29, 2009), in a case challenging jurisdiction,

> In reviewing a Motion to Dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists.   Where a court chooses not to conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction by showing, through affidavits or otherwise, facts that, if true, would support jurisdiction over the defendant.   The allegations of a complaint must be taken as true unless contradicted by the defendant's affidavits and to the extent that the affidavits contradict allegations in the complaint or

> opposing affidavits, all disputes must be resolved in the plaintiff's favor and the plaintiff's *prima facie* showing is sufficient. *Id.*

*Id.* (internal citations omitted).   Defendant Selakovic's Affidavit directly contradicts the allegations in the Amended Complaint, as well as Mr. Escamilla's Affidavit.   Therefore, at this stage of the proceedings, the court must accept as true the representation in the Amended Complaint that David Selakovic executed the Selakovic N/D Agreement.   (Am.Compl. ¶ 17.)

The Selakovic N/D Agreement contains the following clause:

> This agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Colorado applicable to agreements made and to be performed entirely therein without giving effect to the conflicts of laws provisions thereof.

[*Id*. at 15.]   Therefore, the court finds that Greenway has established personal jurisdiction over Defendant David Selakovic pursuant to Fed. R. Civ. P. 12(b)(2) such that he could reasonably anticipate being haled into court in Colorado if there was a dispute involving the subject of the Selakovic N/D Agreement.

Further, for the same reasons set forth in Section I(A) herein as to Steve Blackburn and FSS, the court finds that acceptance of this forum selection clause does not offend traditional notions of fair play and substantial justice.   At this stage of the proceedings the court finds that Greenway has presented a *prima facie* showing of personal jurisdiction over David Selakovic.

## II.   *Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).   As noted, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.*

*Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   The *Iqbal* evaluation requires two prongs of analysis.   First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949.   Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id*. at 1951.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1940.   Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "   *Id.* at 1949 (citation omitted).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Iqbal*, 129 S. Ct. at 1949.

12

### A.      Count I-Breach of Contract against Steve Blackburn and FSS

To prevail on its claim for breach of contract, the Amended Complaint must allege facts that would establish four elements: (i) existence of a contract between Greenway and Defendants Blackburn and FSS; (ii) performance by Greenway; (iii) failure to perform by FSS; and (iv) resulting damages to Greenway.   *See Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The Amended Complaint specifically delineates two separate contacts which it alleges Steve Blackburn and FSS breached.   First, Greenway alleges that "Defendants Blackburn and Fulfillment executed a Non Disclosure and Non Circumvent Agreement with [Greenway] on or about April 21, 2011" and claims that this contract is attached as Exhibit 1 to the complaint.   (*Id*. ¶¶ 14 and 34.)   Exhibit 1 to the Amended Complaint is actually a "Non Disclosure Agreement for Greenway Nutrients™ and No Spider Mites™" featuring Greenway and Non Spider Mites as the "Disclosing Parties" and "Fullfillment Serive Solutons" the "Receiving Party,"[5] dated 6-21-11, and which is unsigned by Greenway (hereinafter "NDC/Fullfillment Serive Solutons").[6]   There is no signature line for No Spider Mites™.   Steve Blackburn's name is printed in ink next to the word "By:" below ink-printed "Fullfillment Serive Solutons" and there is an indecipherable scribble on a second "By:" line which appears below a blank line next to the phrase "Company Name:_____."   Steve Blackburn, individually, is not a party to this document.

The second contract alleged to have been breached by Steve Blackburn and FSS is the previously identified Fulfillment Agreement between Greenway Nutrients, Inc. and Fulfillment

---

[5] Defendant in this case is named Fulfillment Solutions Services.
[6] No Spider Mites is not alleged to be either a Plaintiff or a Defendant.   In fact, from the Amended Complaint it appears that No Spider Mites is simply a product sold by Plaintiff. (Am.Compl. ¶ 13.)

Solutions Services, LLC.   The Fulfillment Agreement is signed "By:" Gustavo Escamilla on

behalf of Greenway and "By:" Steve Blackburn on behalf of Fulfillment Solutions Services, LLC.

The signature of Mr. Blackburn on this contact signed on behalf of FSS is completely legible and

bears no resemblance to the scribble that appears on the bottom line of the NDC/Fullfillment

Serive Solutons document.   Steve Blackburn, individually, is not a party to this contract.

Further, this court finds that the allegations related to breach of the NDC/Fullfillment

Serive Solutons document or on some other unattached April 21, 2011 agreement fail to satisfy

the basic pleading requirements for a breach of contract allegation – the existence of a contract.

"Under Rule 8(a)(2), a pleading must contain 'a short and plain statement of the claim showing

that the pleader is entitled to relief.'" *Allen v. Falk*, Case No. 14-cv-01176-RBJ-MJW, 2015 WL

156777, *4 (D. Colo. January 12, 2015); Fed. R. Civ. P. 8(a)(2).   Despite the District Court's

clear warnings concerning confusion over multiple alleged contracts in this case and the

Greenway's failure in this regard in its initial Complaint,[7] Greenway continues to mislabel and

misidentify the documents it alleges have been breached and who the parties to such an agreement

might be.

On its face, the Fulfillment Agreement is between Greenway and FSS.   Steve Blackburn,

while alleged to be a party to this agreement, signs only in his capacity as authorized agent of

FSS.   A party who is acting as an agent for a principal is not liable on a contract when (1) it has

authority to act, (2) it has given notice to the third party that there is a principal that he acts on

---

[7] Chief Judge Krieger's Order stated, "when re-filing the Amendment Complaint, as directed
below, the Plaintiff shall be sure to attach the correct contracts and label them appropriately.
Further, with regard to *each* breach of contract claim, the Amended Complaint must specifically
reference the appropriate contract by referring to the proper exhibit number for that contract."
(MSK Order at 11.)

behalf of, and (3) there is notice of the name or identity of the principal.   *Rossetti Associates, Inc.*

*v. Santa Fe 125 Denver, LLC*, Case No. 09-cv-00338-WJM-BNB, 2011 WL 834177, at *4 (D.

Colo. March 4, 2011) (citing *Fink v. Montgomery Elevator Co. of Colo.*, 421 P.2d 735, 737

(Colo.1966)).   There is no allegation that Steve Blackburn did not have authority to act as the

agent of FSS and the fact that he was acting on behalf of FSS is apparent on the face of the

document.

The Fulfillment Agreement delineates certain services to be performed by "Contractor,"

Fulfillment Solutions Services, with respect to the product No Spider Mites and "grants to

Contractor the right to become a wholesaler and distributor of No Spider Mites.™"[8]   (Fulfillment

Agreement ¶ 7.)   The Fulfillment Agreement states:

> Contractor shall serve Company [Greenway Nutrients and No Spider Mites] by
> fulfilling its customer orders for No Spider Mites™. Contractor's duties and
> obligations include purchasing all of the materials for bottling and distribution of
> No Spider Mites™ including, but not limited to bottles, caps, seals, sprayers,
> boxes, box fillers, labels, oil products and all other things necessary and required
> to have a finished product ready for distribution. Contractor agrees [ ] advance all
> costs to bottle, label, warehouse and distribute No Spider Mites™. Contractor
> agrees to have ample raw materials on hand at all times to fill orders for No Spider
> Mites™.

(*Id.* ¶ 1).

The Fulfillment Agreement incorporates as an essential term, "Exhibit A," which features

the specifics of the compensation to be paid to FSS by Greenway, (*id.* ¶8) stating:

> Company and Contractor have worked jointly and diligently on preparing Exhibit
> A.   The parties acknowledge that in the preparation of Exhibit A there are
> numerous assumptions.   It is in the spirit of cooperation that the parties agree to

---

[8]   This contract does not mention a product called No Powdery Mildew which Plaintiff alleges it
received from a company called Ecowin.

continue to modify their economic relationship based on factors unknown at the present time."

(*Id*. at 10.)   No Exhibit A is attached to the Fulfillment Agreement as it is appended to the Amended Complaint.

The contract calls for FSS to package and fill orders for No Spider Mites to Greenway's direct customers.   The court can and does infer from the allegations of the Amended Complaint that FSS at least partially performed pursuant to the Fulfillment Agreement.   (*See* Am.Compl. ¶ 23 [FSS had prepared inventory of No Spider Mites on hand] and ¶ 29, ["Defendants began selling Greenway's stock of "No Spider Mites' . . . through Fulfillment Solutions and Supreme Growers"].)   Additionally, the Amended Complaint alleges that David Selakovic, not a party to the Fulfillment Agreement but representing himself as "David Selakovic of 'Fulfillment Service Solutions, LLC,'"[9] used his credit card to purchase the supplies necessary to undertake the contract, including the costs advanced to "bottle, label, warehouse and distribute" as required (Am.Compl. ¶ 18; Ex. 4).   Also, FSS is alleged to have sold a portion of its stock of Greenway's "No Spider Mites," as well as another product not mentioned in any contract, called "No Powdery Mildew."[10]   (Am.Compl. ¶ 29.)   The Amended Complaint alleges that FSS "failed to honor its fulfillment agreement with Greenway by refusing to deliver Greenway's products." (Am.Compl. ¶38.)   However, there are no factual averments describing the what, when, where and how FSS failed to deliver under the contract.

---

[9]  The defendant in this case is Fulfillment Solutions Services, LLC not Fulfillment Service Solutions.

[10]  Greenway characterizes these sales as "unauthorized and unlicensed sales" (Am.Compl. ¶¶30, 38) but this is simply a conclusory statement with no evidentiary support.   Further, the Fulfillment Agreement specifically required FSS to attempt to sell the stock of No Spider Mites it had on hand as part of its wholesale distributor agreement with Greenway.

Additionally, performance under the contract by Greenway toward FSS pursuant to the contract must also be plausibly pled.   *Western Distrib. Co.*, 841 P.2d at 1058.   The "performance" element in a breach of contract action means "substantial" performance.   *Id.* Substantial performance occurs when, "although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, he has received substantially the benefit he expected, and is, therefore, bound to pay."   *Newcomb v. Schaeffler*, 279 P.2d 409, 412 (Colo. 1955).   The plaintiff, in a breach of contract case, "bears the burden of proving 'that he substantially performed his part of the contract.'"   *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.,* 958 F.Supp.2d 1238, 1243 (D. Colo. 2013) (quoting *Western Distributing Co.*, 841 P.2d at 1058).

The exact parameters constituting performance by Greenway pursuant to the Fulfillment Agreement presumably would have been contained in the missing "Exhibit A."   Greenway has wholly failed, as part of the Amended Complaint, to set forth even one factual assertion that it performed under the Fulfillment Agreement it claims was breached.   The Amended Complaint does not assert that Greenway ever paid FSS for any of its services, nor is there an allegation that Greenway ever re-paid the money advanced by Selakovic for the original start-up costs.

Since two of the required elements for a breach of contract claim are missing from the Amended Complaint, this court recommends that Count One be dismissed in its entirety against Defendants Steve Blackburn and FSS.   Further, since Greenway has already been afforded the opportunity to file an Amended Complaint addressing the initial Complaint's glaring inadequacies, this court recommends that Count One be dismissed with prejudice.

17

**B.**     ***Count II-Breach of Contract against David Selakovic***

The only contract purportedly signed by David Selakovic is the Selakovic N/D Agreement discussed in Section I(B)(2) which Defendant Selakovic claims is a forgery.   (Am. Compl., Ex. 3; Mot. at 13.)   Greenway alleges that it required David Selakovic to execute this confidentiality agreement "in furtherance of a proposed business relationship" so that Greenway could "share confidential and proprietary information about its business and products" with Mr. Selakovic. (*Id*. ¶ 17.)   Greenway then alleges that it "provided Blackburn, Selakovic and Fulfillment with the names of its distributors, customers, retailers, label supplier, bottle supplier, etc." (*id*. ¶ 18) and its "trade secret and proprietary information pertaining to the identity of its manufacturers and suppliers, its supply chain, retailers, wholesalers, and industry contacts, along with Greenway's internal notes and pricing."   (*Id*. ¶ 19.)

The Selakovic N/D Agreement is not signed by Greenway.   The lack of a signature on a contract may be the kiss of death in a case involving the statute of frauds, but it does not negate a contract in a situation where the parties may form an oral contract.   Whether the parties have entered into a contract is a question of fact.   *See Southern Colorado MRI, Ltd. v. Med–Alliance, Inc.,* 166 F.3d 1094, 1098 (10th Cir. 1999)( *citing I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 887 (Colo. 1986)); *see also Buckles Management, LLC v. InvestorDigs, LLC*, 728 F. Supp. 2d 1145, 1150 (D. Colo. 2010); *Ellis Canning Co. v. Bernstein, supra,* 348 F. Supp. 1212, 1221 (D. Colo. 1972) (citing *Marti–Matter Co. v. Thomas,* 70 Colo. 478, 202 P. 703 (1921)) (whether there has been a meeting of the minds is a question of fact to be determined from all of the evidence in the case).   As noted, *infra*, the court must accept the disputed facts as true for purposes of this motion.

Unlike the 'NDC/Fullfillment Serive Solutons' document, the Selakovic N/D Agreement clearly delineates the parties to the agreement as David Selakovic, Receiving Party, and Greenway Nutrients™ and No Spider Mites,™ Disclosing Party.   Greenway, the party whose signature is missing on the exhibit, is the party proffering the contract and as such acknowledges its agreement to its terms.

The Selakovic N/D Agreement bans disclosure and unauthorized use of certain "Confidential Material" which was to be provided to the "undersigned . . . Receiving Party" and requires the "Receiving Party" to disclose the confidential material only to others with a "need to know."   (Mot., Ex. 1, at 13.)   The Receiving Party also agrees that it will use the Confidential Material solely for the purpose "described above," although there is no purpose described anywhere within the document itself.   (*Id*.)

Greenway sufficiently alleges its performance under the Selakovic N/D Agreement (Am.Compl. ¶¶ 18, 19, 21 and 22 [providing confidential material to Selakovic and others].).   As to the failure to perform under that Agreement by David Selakovic, Greenway continues primarily with conclusory comments or bare assertions, stating that Selakovic has "extensively disclosed" the information he received from Greenway and claiming, without proffered factual support, that confidential information has been disclosed to "third parties such as Vegalab, LLC, Ecowin, LLC and New Epic Media, LLC" for the purpose of reverse engineering the products and selling that product to Greenway's customers.   (Am.Compl. ¶ 32.)   A pleading cannot survive a motion to dismiss "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Iqbal* at 678.

Greenway also, however, alleges that Selakovic, "upon information and belief," contacted its supplier of No Powdery Mildew, Ecowin, with the purpose of interfering with Greenway and

19

Ecowin's business arrangement.   (Am. Compl. ¶ 27.)   Greenway alleges that the identity of the

supplier of No Powdery Mildew was one of its confidential trade secrets and therefore covered by

the Selakovic N/D Agreement.[11]   Greenway claims that after a disagreement over finances

erupted between Gus Escamilla and Steve Blackburn, Greenway placed an order with Ecowin for

No Powdery Mildew.   Ecowin allegedly declined to fill the order and told Greenway "that

Greenway's sales agent was no longer employed with Ecowin because of a recent management

change."  (Am. Compl. ¶ 26.)   Ecowin also informed Greenway "that they had obtained other

partners in the U.S. to the exclusion of Greenway."[12]   (*Id.*)   The court accepts these factual

averments as true as it must; however Greenway concludes, without one shard of alleged factual

support, that "upon information and belief" Selakovic and Blackburn contacted Ecowin and

interfered with Greenway's business relationship.   This conclusion is not entitled to a

presumption of truth.

          "When a plaintiff sets out allegations on information and belief, he is representing that he

has a good-faith reason for believing what he is saying, but acknowledging that his allegations are

'based on secondhand information that [he] believes to be true.'"   *Pirelli Armstrong Tire Corp.*

*Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 442 (7th Cir. 2011); *Shapiro v. Falk*,

Case No. 13-cv-03086-WJM-KMT, 2014 WL 4651952, at *6 (D. Colo. Sept. 18, 2014).   The

---

[11]   It is far from clear that the Selakovic N/D Agreement would even apply to information about
No Powdery Mildew.   The product which is covered by the Selakovic N/D Agreement is No
Spider Mites; No Powdery Mildew appears nowhere in the Selakovic N/D Agreement.
(Am.Compl., Ex. 3)   However, at the pleading stage the court will accept the Plaintiff's assertion
that this was disclosed confidential information.

[12]   This court noted that Greenway did not produce any evidence of its alleged "exclusive contract
to distribute 'No Powdery Mildew' with Ecowin in support of its original claims against Ecowin
who is no longer part of this case.   (Rec. at 11 n. 6.)   Greenway has similarly not produced any
such evidence in the Amended Complaint.

Second Circuit has explained that the "*Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted).   In this case, however, there is not even any circumstantial or second-hand evidence that Ecowin began providing its product to Blackburn and/or Selakovic or their related companies including FSS, for purposes of re-sale.   Standing alone, the unsupported suspicions of Greenway regarding Ecowin's decision to discontinue supplying it with No Powdery Mildew do not rise to the level required to actually state a plausible claim consistent with pleading standards stated in *Twombly*, 550 U.S. at 570 and *Iqbal*, 129 S. Ct. at 1949.

In paragraph 30 of the Amended Complaint, Greenway alleges that Steve Blackburn contacted one of Greenway's customers, Sunlight Supply, offering to sell "Greenway-labeled 'No Spider Mites' and 'No Powdery Mildew'" at "substantially lower" prices.   A similar allegation is contained in paragraph 31 of the Amended Complaint with respect to Greenway Nutrient customer, "Watch It Grow," although it is Supreme Growers that allegedly attempted to sell Greenway-labeled products at reduced prices.   In order to support a breach of contract claim against Selakovic, confidential material must have been disclosed by Selakovic to facilitate these transactions.   Selakovic, however, is not mentioned in this allegation and therefore the court cannot simply infer wrongful disclosure by Selakovic deriving from activity allegedly undertaken by Steve Blackburn and Supreme Growers.

Further, the Amended Complaint acknowledges that pursuant to the Fulfillment Agreement, FSS had inventory of No Spider Mites and No Powdery Mildew on hand to process

for ultimate shipment to customers.   (Am. Compl. ¶ 23.)   There is no averment that any of the products which Blackburn and/or Selakovic later offered for sale (allegedly without permission from Greenway) came from Ecowin.   Asking for plausible grounds to infer actions taken by a defendant "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the allegation.   *Twombly*, 550 U.S. at 556; *Design Basics, LLC v. ProBuild Co., LLC*, Case No. 10-cv-02274-REB-BNB, 2011 WL 3366436, at *4 (D. Colo. Aug. 4, 2011).   The Amended Complaint sets forth no grounds supporting a reasonable expectation that such evidence will be discovered.

Finally, the Amended Complaint also accuses Blackburn and Selakovic of "reverse engineering" the formula for Greenway Nutrient's "No Spider Mites."   Again, the Amended Complaint is devoid of the 'who, what, when, where and how' factual assertions to support this claim.   Even so, it is clear from the Amended Complaint that the <u>formula</u> for No Spider Mites was not a disclosure that was made by Greenway to anyone, as Greenway did not manufacture the product.   Instead Greenway actually purchased the product from an outside, undisclosed source. (Am.Compl. ¶ 13.)   There is no allegation that Selakovic, or anyone else, learned the identity of the manufacturer of No Spider Mites from Greenway's disclosures pursuant to the Selakovic N/D Agreement.   Therefore, to the extent the court accepts the unsupported allegation that Blackburn and Selakovic caused Greenway's No Spider Mites to be reverse engineered, that action would not be a breach of the Selakovic N/D Agreement.

This court finds that the Amended Complaint does not contain sufficient facts to support a plausible claim that David Selakovic breached the purported Selakovic N/D Agreement.

Therefore, this court recommends that Count II be dismissed.

  **C.**  *Count III-Unjust Enrichment against Steve Blackburn, FSS and David Selakovic*

  The elements of the claim of unjust enrichment are:

> (1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit. *See Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779, 780 (Colo. 1967)

*Cargill, Inc. v. Stafford*, 553 F.2d 1222, 1224 (10th Cir. 1977).   The principle underlying a claim of unjust enrichment is to deprive a wrongdoer of benefits that in equity and good conscience he ought not to keep.   *Scanwell Laboratories, Inc. v. Thomas*, 521 F.2d 941, 949 (D.C. Cir. 1975). Under Colorado law, a plaintiff must allege that at the plaintiff's expense, defendants received a benefit under circumstances that would make it unjust for defendants not to make restitution. *Van Zanen v. Qwest Wireless, LLC*, 550 F. Supp. 2d 1261, 1266 (D. Colo. 2007) (citing *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998)).   Further, equitable remedies such as unjust enrichment normally are available only when the remedy at law is inadequate. *Tyler v. City of Manhattan*, 118 F.3d 1400, 1416 (10th Cir. 1997).

  Greenway alleges that it was defrauded by Blackburn, Selakovic and FSS into giving up its trade secrets and other proprietary information under the guise of entering into a legitimate business arrangement.   (Am.Compl. ¶¶16-17.)   The Amended Complaint alleges that (1) the defendants funded the initial joint business venture by providing access to Selakovic's credit card to purchase a large quantity of Greenway product from third party suppliers and (2) FSS began the process of filling, labeling and distributing orders to Greenway customers.   (*Id*. at ¶ 18.) Greenway alleges, although the sequence of events is unclear, that Blackburn fabricated a

business dispute and created an unnamed business to "compete with Plaintiff in the sale of agricultural products and organic pesticides" rather than perform under the wholesale distribution agreement FSS had with Greenway.   (Am.Compl. ¶ 44.)   Greenway alleges that after the fabricated dispute, Blackburn and Selakovic used No Spider Mites product which they had in their possession pursuant to the Fulfillment Agreement to reverse engineer the product and manufacture and market the counterfeit substance as Greenway's real No Spider Mites to Greenway's customers.   (*Id.*¶ 28.)   Greenway alleges, albeit in conclusory language, that Defendants Blackburn, FSS and Selakovic disclosed unidentified information gained from Greenway to third parties such as Vegalab, LLC, Ecowin, LLC, Josh Gill and New Epic Media, LLC for the purposes of marketing the reverse engineered No Spider Mites and subsequently used Greenway's "internal customer notes and pricing to undercut Greenway Nutrients' rates and unfairly compete with ill-gotten inside information."   (Am. Compl. ¶¶ 32, 44.)   Paragraphs 28, 30 and 31 of the Amended Complaint set forth facts which, if true, support Greenway's unjust enrichment allegations.

Finally, Greenway claims that Blackburn, Selakovic and FSS have "gained substantial benefit from the information and goods improperly obtained from Greenway" and that "Greenway has suffered significant damage." (Am.Compl. ¶ 44.)   Greenway claims it has been "harmed by the loss of goods and services promised to Greenway as well as from the improper competition against its legitimate business operations."   (*Id*. ¶ 48.)

This court finds that Greenway has set forth sufficient facts, accepted as true, to state a claim for unjust enrichment against Defendants Blackburn, FSS and Selakovic that is plausible on its face.   Further, since the Amended Complaint fails to state claims against the same three

24

defendants for breach of contract, Greenway does not have an adequate remedy at law to address the alleged behavior.   Therefore, the court recommends that Defendants' Motion to Dismiss be denied as to Count III.

> **D.      *Count IV -- Trademark Infringement (15 U.S.C. §1114) against Steve Blackburn, David Selakovic, FSS and Supreme Growers***

Counts IV and V of the Amended Complaint are brought against all the named defendants.   15 U.S.C. § 1114 provides:

> (1) Any person who shall, without the consent of the registrant—

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

"[I]n order to establish trademark infringement, a plaintiff must prove the validity of the mark it seeks to protect and must also prove that the use of a similar mark by defendant is 'likely to cause confusion in the market place concerning the source of the different products.'" *USA Network v. Gannett Co.*, 584 F. Supp. 195, 198 (D. Colo. 1984) (*quoting Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983)).

To determine whether a likelihood of confusion exists, courts examine six non-exhaustive factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in

adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1138 (10th Cir.2008) (internal quotations omitted). "The party alleging infringement has the burden of proving likelihood of confusion." *Id.*; *see also KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004). This "likelihood of confusion" test is applicable not only to Greenway's trademark infringement claims, but also to its claim of false designation of origin, 15 U.S.C. § 1125. *Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir. 1984)

The Amended Complaint alleges that Greenway is a supplier of plant nutrients and organic pesticides to the botanical industry and the owner of U.S. Trademark Reg. No. 4007591 for "Greenway Nutrients" as "a house mark for a full line of chemical and organic fertilizer mixes and compounds." (Am.Compl. ¶ 11.) It alleges that products called "No Powdery Mildew" and "No Spider Mites" were both sold under the "Greenway Nutrients" registered trademark. (*Id.* ¶ 13.)

As a result of the Fulfillment Agreement, FSS came into possession of some of Greenway's product supply and its labels and bottles, as well as Greenway's "design codes, marketing plans, strategy memos and back office access." (*Id.* ¶¶ 19-21.) Greenway alleges that Selakovic "confirmed to Greenway's President Gustavo Escamilla that he was Defendant Blackburn's partner, . . . ." (*Id.* ¶ 18.)

26

Greenway alleges that Blackburn and Selakovic, through FSS and Supreme Growers,[13] began unauthorized selling of "No Spider Mites" and "No Powdery Mildew."   (Am.Compl. ¶ 29.)   Greenway alleges that Blackburn and Selakovic reverse engineered "No Spider Mites" and then began selling the counterfeit product with Greenway's trade name.   (*Id*. at ¶ 28).   Greenway alleges that this behavior "jeopardize[es] Greenway's trade name, brand, goodwill and standing in the industry."   (*Id*.)   Greenway also alleges that in November 2012, Steve Blackburn offered to sell Greenway marked "No Spider Mites" and "No Powdery Mildew" at greatly reduced prices, informing the buyer that Blackburn had funded the development of the Greenway Nutrients product line.   (*Id*. ¶ 30.)   Further, in November 2012, the complaint alleges that Mr. Escamilla was informed that Supreme Growers was selling Greenway's "No Powdery Mildew" and "No Spider Mites" products, "for pricing that is amazing" and told Escamilla that Supreme Growers misrepresented that Supreme Grower's "corporate office is located in Fort Collins, Colorado, but all of our Greenway liquidation is currently in West Palm Beach, Florida."   (*Id*. ¶ 31.)

The Amended Complaint concludes that the four named Defendants have sold products bearing the Greenway Nutrients mark without authorization or license of Greenway and that they have sold counterfeit products also bearing the Greenway Nutrients mark without authorization.   (*Id*. ¶ 53)   Greenway alleges that this unauthorized sale of both legitimate and counterfeit

---

[13] The Amended Complaint does not set forth any allegations with respect to Supreme Growers' affiliation with either Blackburn or Selakovic.   The original Complaint [Doc. No. 1] identified Supreme Growers as being owned by James Halk who does not appear to have any affiliation with any of the defendants in this case.   (Compl. ¶ 20.)

products is likely to cause confusion or mistake and is intended to deceive the consuming public. (*Id*. ¶ 54.)

This court finds that when taking the factual allegations of the Amended Complaint as true, Greenway adequately states a claim meeting the elements of trademark infringement against Steve Blackburn, David Selakovic and FSS.   Therefore it is recommended that the Motion to Dismiss be denied as to those defendants on Count IV.

The only non-conclusory allegations supporting these claims against Supreme Growers, LLC, come in paragraphs 29 and 31 of the Amended Complaint.   In paragraph 29, Greenway alleges only that Supreme Growers was selling its stock of "No Spider Mites" and "No Powdery Mildew."   There is no fact setting forth any reason why this would be in violation of Greenway's trademark rights, especially in light of the Fulfillment Agreement giving FSS the right to distribute Greenway's products.   Paragraph 31 simply recites that Supreme Growers was selling "No Powdery Mildew" and "No Spider Mites" for "pricing that is amazing."   Again, there is no factual predicate that this sale is in anyway wrongful or in violation of Greenway's trademark. In both instances, the allegations are that Supreme Growers is selling products clearly marked as Greenway Nutrients that it received from Greenway's distributor, FSS, located in Florida.   In paragraph 31, Supreme Growers merely states that it is selling "Greenway liquidation."

Greenway makes no allegation that Supreme Growers reproduced, counterfeited, copied, or imitated its mark.   There is no allegation of public "confusion" as Supreme Growers is not alleged to have misrepresented the commodity it was selling as being anything other than Greenway's products.   Therefore, Greenway has failed to plead facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   This court

therefore recommends that Count IV of the Amended Complaint be dismissed as to Supreme Growers.

> **E.      Count V- False Designation of Origin/Unfair Competition (15 U.S.C. § 1125) against Steve Blackburn, David Selakovic, FSS and Supreme Growers**

Trademark infringement is a type of unfair competition.   *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). False designation of origin is also a form of unfair competition pursuant to 15 U.S.C. § 1125(a), normally premised on identical facts.   "An unfair competition claim requires a plaintiff to establish that (1) the mark/name is protectable, and (2) that defendants' use of an identical or similar mark will likely cause confusion among consumers."   *Greenway Univ., Inc. v. Greenway of Arizona, LLC*, Case No. 11-cv-01055-RBJ-KLM, 2012 WL 1801948, at *7 (D. Colo. May 17, 2012).

15 U.S.C. § 1125(a) provides

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of

29

> his or her or another person's goods, services, or commercial
> activities,

> shall be liable in a civil action by any person who believes
> that he or she is or is likely to be damaged by such act.

On the basis of the same factual averments considered by this court with respect to the claim for trademark infringement against Steve Blackburn, David Selakovic and FSS, the court also finds that the Greenway has stated a claim for False Designation of Origin pursuant to Section 1125(a)(1)(A) against the same defendants.   Therefore it is recommended that the Motion to Dismiss be denied as to Count V as to Steve Blackburn, David Selakovic and FSS.

Paragraph 31 of the Amended Complaint alleges that Supreme Growers stated that its "corporate office is located in Fort Collins, Colorado, but all of our Greenway liquidation is currently in West Palm Beach, Florida."   Presumably, this allegation forms the genesis of the claim against Supreme Growers for a violation of Section 1125(a)(1)(B).   Taken as true, however, this allegation of what was said by Supreme Growers does not misrepresent the origin of Greenway's products. Instead, it merely states where Supreme Growers believes the "liquidation" inventory is currently located.

Therefore, the court finds that Greenway has failed to state a claim for false designation of origin against Supreme Growers and recommends that Count V of the Complaint be dismissed against Supreme Growers.   Since Counts IV and V are the only counts in the Amended Complaint in which Supreme Growers is named as a Defendant, this court recommends that

Supreme Growers be dismissed from the case.

WHEREFORE, for the foregoing reasons, I respectfully **RECOMMEND** that

Defendants' "Motion to Dismiss First Amended Complaint" [Doc. No. 109] be

**GRANTED** in part and **DENIED** in part as follows:

1.   The Motion should be granted with respect to Counts I and II and the claims for breach of contract dismissed.

2.   The Motion should be granted with respect to Counts IV and V against Defendant Supreme Growers, LLC and Supreme Growers, LLC should be dismissed from the case.

3.   The Motion should be denied with respect to Counts III, IV and V against Defendants Steve Blackburn, David Selakovic and Fulfillment Solutions Services, LLC.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district

31

court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 20th day of February, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

32