IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–01088–MSK –KMT

GREENWAY NUTRIENTS, INC.,

    Plaintiff,

v.

STEVE BLACKBURN,
DAVID SELAKOVIC,
FULFILLMENT SOLUTIONS SERVICES, LLC,
SUPREME GROWERS, LLC,

    Defendants.

## ORDER

This matter is before the court on Defendants' "Motion for Sanctions and Indirect Criminal Contempt" ("Mot.") [Doc. No. 115] filed July 23, 2014.  Plaintiff filed its "Opposition to Motion for Sanctions and Indirect Criminal Contempt" ("Resp.") [Doc. No. 117] on August 6, 2014 and Defendants filed their Reply [Doc. No. 118] on August 18, 2014.  Several months later, non-party Thomas Ryan filed a "Motion to Hold Gus Escamilla and Marc Kent in Contempt of Court" [Doc. No. 120, filed October 6, 2014] together with a 4-page Affidavit of Thomas F. Ryan [Doc. Nos. 119 and 120-1] and numerous exhibits.[1]  Plaintiff filed a "Renewed Opposition to Motion for

---

[1] This motion could be stricken outright as improperly filed by a non-party.  Given its relation to

Sanctions and Indirect Criminal Contempt" after concluding that Thomas F. Ryan had "joined" Defendants' original motion.   [Doc. No. 123.]

Defendants and Thomas Ryan contend that Gus Escamilla, owner of Plaintiff Greenway Nutrients, has violated this Court's July 12, 2013 Order prohibiting him from having any direct or indirect communications with any of the defendants' disclosed witnesses, which include Thomas Ryan, his ex-wife Wendy Ryan and their daughter Jessica Campbell.   (Minutes [Doc. No. 66].) At the time the Order was entered, the court had required the personal appearance at a motions hearing by Mr. and Mrs. Ryan, Steve Blackburn and Gus Escamilla, together with their attorneys, to discuss threatening and harassing emails Mr. Escamilla admittedly was sending to defendants and witnesses, including members of the Ryan family.   An example of one of the representative emails which prompted the actions of this court at the beginning of the case was sent by Mr. Escamilla to ryantlaw@aol.com on June 11, 2013 at 10:22 am, read

> DO YOU "SEE" THESE FUCKEN IDIOTS??? YOUR ASSES ARE NEXT!!' ONLY THIS IS NOT A CIVIL MATTER ANY LONGER!!!! IT'S CRIMINAL!!!! BTW YOUR STUPID ASSES SHOULD READ THE THEFT OF TRADE SECRETS ACT OF 2012, THE ECONOMIC ESPIONAGE ACT OF 1996, WIRE FRAUD, MAIL FRAUD AND ON AND ON!!! JESSIE CAMPBELL AKA JESSIE RYAN SHOULD GET TO KNOW THESE LAWS EXCEPTIONALLY WELL!! !! I WONDER HOW LONG OR HOW MUCH PRESSURE SHE CAN TAKE!!!! IM ABOUT TO FIND OUT!!!! SHE TOM AND ALL YOU MOTHER FUCKEN IDIOTS ARE GUILTY AS FUCK!!!!! YOU STUPID STUPID FOOLS!!!! IM GOING TO NAIL YOUR STUPID INGRATE ASSES !!!! YOUR ALL FUCKED!!!! TOM YOUR A FOOL A STUPID STUPID PATHETIC FOOL!!! !!

("Motion for Sanctions and Protective Order" [Doc. No. 45] at 4.)   The Ryans appeared as

---

the Defendants' properly filed motion, however, and the history of this case and the proceedings held in July 2013, the court will instead deal with the subject matter of the motion on its merits.

ordered, telling this court they were afraid of Mr. Escamilla and felt that he might harm them. Jessica Ryan, mentioned in the email noted by the court, appears to have no connection whatsoever to the allegations of this case other than being the daughter of Thomas Ryan who once represented Mr. Escamilla as an attorney.

Mr. Escamilla also personally appeared and admitted sending the emails which were presented to the court.  Mr. Escamilla explained his personal frustration experienced as a result of his dealings with the persons involved in this litigation.   Ultimately Mr. Escamilla apologized to the court and stated that he would discontinue any further communications with the Ryans or any other witness or defendant.   The court vehemently reprimanded Mr. Escamilla and issued the order that he cease and desist all contact, direct or indirect, with witnesses in the case.

This court heard nothing further about Mr. Escamilla's alleged behavior until the instant motion was filed a year later.   Defendants and Mr. Ryan now complain that Mr. Escamilla is using the internet to attack them, alleging that he has posted perverted and insulting items on internet blog sites about Defendants David Selakovic and Steve Blackburn and attorney Charles Wender.[2]

---

[2] The motion lists the following examples of internet postings, and provides photographic evidence to support each one: (1) "Photograph of Selakovic imposed over texts stating that he is a thief, homesexual [sic], con man, 'Butt Pirate'"; (2) "Photograph of Blackburn with text 'I Blow David Selakovic! Hi, I'm Steve Blackburn and I'm an Inbred Pig-Nosed Face Pole Smoker'"; (3) "Graphics with pictures of Selakovic as a 'con-artist'"; (4) "Repeated photographs of Defendants' counsel stating 'Charles Wender- Ambulance Chaser'"; (4) "Photographs of Selakovic with his wife"; (5) "Photographs of two naked men spanking one another, with Selakovic's picture superimposed and text 'David, the Rear Admiral' and 'Selakovic Gets Spanked'" ; (6) "Repeated accusations of Defendants being con men, thieves, reports to the FBI and the Palm Beach County Sheriff's Office";(7) "Photographs of two naked men riding a bicycle with Selakovic and Blackburn's faces superimposed"; (8) "Photographs of Blackburn and his wife, with caption 'Steve and Stacy Blackburn - West Palm Beach Counterfeit Scam Artists'"; (9) "Photograph of Tom Ryan 'spanking' Attorney Charles Wender' s naked buttocks"; (10) "Repeated accusations of

Further, the defendants claim that Gus Escamilla has illegally usurped David Selakovic's identity, portraying himself as David Selakovic and sending false emails to Selakovic's business associates in order to harass and intimidate Mr. Selakovic.  Defendants also allege that Mr. Escamilla has filed baseless complaints with the Florida Bar attempting to jeopardize the law licenses of Mr. Wender and Mr. Ryan.

Plaintiff, while not specifically denying involvement by Mr. Escamilla in the objectionable behavior, states, "there has been no showing of proof or other evidence to connect Mr. Escamilla to the challenged statements, posts, or emails."  (Resp. at 2.)   In fact, Plaintiff alleges that one of the posts containing the superimposed images of certain defendants in this case actually predated the dispute between the parties which is at issue.  Counsel for Plaintiff infers from this that someone other than Mr. Escamilla may have had a dispute with the defendants and has posted the offending internet blogs.  (*Id.*)

### *LEGAL STANDARD*

"There are two types of contempt: civil and criminal contempt."  *Ernest v. Lockheed Martin Corp.*, Civil Action No. 07–cv–02038–WYD–KLM, 2009 WL 1698505 at *3 (D. Colo. June 16, 2009).  "Federal Rule of Criminal Procedure 42 applies to criminal contempt.  There is no similar procedural rule for civil contempt."  *Home Design Servs., Inc. v. B & B Custom Homes, LLC*, Civil Action No. 06–cv–00249–WYD–GJR, 2008 WL 927683 at *4 (D. Colo. Apr. 3, 2008). Contempt power is found in 18 U.S.C. § 401, which states,

A court of the United States shall have power to punish by fine or imprisonment, at

---

Defendant Selakovic being the 'Counterfeit Queen,' 'Con-Artist,' 'Kingpin,' 'Mastermind of counterfeiting ring'"; and, (11) "Copy of Selakovic's expired passport."  (Mot. at 3.)

its discretion, such contempt of its authority, and none other, as—

   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
   (2) Misbehavior of any of its officers in their official transactions;
   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.

Courts have inherent power to enforce compliance with their lawful orders through civil contempt. *Shillitani v. United States,* 384 U.S. 364, 370 (1966). Civil contempt "is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Law v. National Collegiate Athletic Assoc.,* 134 F.3d 1438, 1442 (10th Cir.1998) (quoting *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949)). The remedial aspects of civil contempt outweigh the punitive considerations. *Ager v. Jane C. Stormont Hospital,* 622 F.2d 496 (10th Cir. 1980). An order of civil contempt must be supported by clear and convincing evidence establishing (1) the existence of a valid court order, (2) that the contemnor had actual knowledge of the order, and (3) that the contemnor disobeyed the order. *F.T.C. v. Kuykendall,* 371 F.3d 745, 756-57 (10th Cir. 2004); *see Reliance Ins. Co. v. Mast Constr. Co.,* 159 F.3d 1311, 1315 (10th Cir. 1998).

"Direct criminal contempt consists of contumacious conduct committed in the presence of the court. An indirect criminal contempt consists of contumacious conduct directed to the court but not committed in its presence." *Parkhurst v. United States Dep't of Educ.*, 9 Fed. Appx. 900, 904 (10th Cir. May 25, 2001) (unpublished)(internal citations omitted). Indirect criminal contempt is "intentional obstructions of court proceedings that literally disrupted the progress of

5

the trial and hence the orderly administration of justice."  *United States v. Wilson*, 421 U.S. 309, 315-16 (1975)).

The contempt power which allows a court to punish as criminal contempt misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice, cannot be used, however, to punish a person for committing illegal acts without the additional showing that the illegality is part of some greater design to interfere with judicial proceedings.  *See United States v. Dunnigan*, 507 U.S. 87, 93 (1993); *In re Michael*, 326 U.S. 224, 228 (1945).

In addition to contempt authority, the Court can "enjoin litigants who abuse the court system by harassing their opponents pursuant to 28 U.S.C. § 1651(a)."  *Stine v. Lappin*, Civil Action No. 07–cv–01839–WYD–KLM, 2009 WL 9070970 at *15 (D. Colo. June 25, 2009) (quoting *Tripati v. Beaman,* 878 F.2d 351, 352 (10th Cir. 1989).  Indeed, "[t]here is a strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances."  *Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir.1986).  To this end, "'even onerous conditions' may be imposed upon a litigant as long as they are designed to assist the district court in curbing the particular abusive behavior involved."  *Id.* (quoting *Carter v. United States,* 733 F.2d 735, 737 (10th Cir.1984)).

### *ANALYSIS*

Gus Escamilla, one of the owners of Plaintiff Greenway Nutrients, is not an individual party to this action, which primarily involves claims by Greenway Nutrients for trademark infringement and extra-contractual damages in connection with a business deal gone bad.

Missing from the assertions in the pending motions and in all the Affidavits is any allegation that non-party Escamilla is misusing *the court process* to carry out a vendetta against Mr. Selakovic and/or Mr. Ryan, the non-party former lawyer of Mr. Escamilla.   The allegations are that Mr. Escamilla is libeling Mr. Selakovic and others by posting lewd pictures and obscene comments in blogs on the internet and that Mr. Escamilla has stolen Mr. Selakovic's electronic identity in order to harm Mr. Selakovic's reputation with his business associates.   Further, it is alleged that Mr. Escamilla has filed false and frivolous complaints with the Florida state bar against Mr. Wender, the attorney for defendants in this action and Mr. Ryan.[3]   Defamation, including both libel and slander, can be both a crime and grounds for a civil suit seeking damages.   Should any of the alleged victims wish to address the actions they attribute to Mr. Escamilla, they could file civil actions against him in the appropriate jurisdiction.   That jurisdiction, however, would almost undoubtedly not be a Colorado federal court since none of the parties reside here and no alleged actions were undertaken in this state.   Further, the alleged victims could file complaints with the appropriate law enforcement agencies to try to prevent and/or punish the alleged harassment.   Federal charges might even be brought if the allegations were fully investigated and found to be sustainable against Mr. Escamilla.   But this presumes investigation and the gathering of evidence, not merely accusation and presumption.

Because no one, rich or poor, is entitled to abuse the judicial process, the Court brought both parties and non-parties together in July, 2013 and reprimanded Mr. Escamilla for sending

---

[3] Defendants allege that shortly after Mr. Escamilla filed the attorney grievances, he posted blogs on the internet asserting that the two attorneys were under investigation by the Florida Bar, allegedly in an attempt to damage them both professionally and personally.

abusive emails to persons integral to this litigation and received both his apology and promise to discontinue his activity.  *See Tripati,* 878 F.2d at 353 (noting that "the right of access to the courts is neither absolute nor unconditional . . . [and] there is no constitutional right . . . to prosecute an action that is frivolous or malicious") (citation omitted)).   The court, however, is not in any position to investigate alleged criminal activity, especially criminal activity which is not being undertaken as part of the case.   Plaintiff Greenway Nutrients is represented by competent attorneys who are conducting their case in the manner the court expects by filing motions or responding to the same and otherwise prosecuting the company's civil claims.   And while the court remembers with distaste the hearing where Mr. Escamilla and Mr. Ryan and his family were present, this court's admonition against Mr. Escamilla's threatening emails - which were signed and which Mr. Escamilla admitted he had sent - is simply not comparable to the activities Defendants and Mr. Ryan are now asking the court to punish.   There is no clear evidence before this court that Mr. Escamilla is actually behind the internet postings and, even if there was, the court finds that the activities, while odious, are not contumacious of the court's orders or to the court proceedings.   If true, the activities may be in violation of criminal law which should be addressed, if at all, by a criminal court or which may provide grounds for a civil action in the appropriate jurisdiction.

Finally, it is well within Mr. Escamilla's rights to file an attorney grievance with a bar association against an attorney.   The Florida state bar proceedings are the appropriate place to challenge the allegations against any attorneys licensed in that state -- not here in Colorado in the context of a federal civil action.

Therefore, while this court does not approve of or condone the behavior against which the defendants rail, this court must nevertheless deny the motions to find the Plaintiff, Greenway Nutrients, in contempt of court.

**It is ORDERED**

Defendants' "Motion for Sanctions and Indirect Criminal Contempt" ("Mot.") [Doc. No. 115] and Thomas Ryan's "Motion to Hold Gus Escamilla and Marc Kent in Contempt of Court" [Doc. No. 120] are **DENIED**.

Dated this 26th day of February, 2015.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge