**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-01088-MSK-KMT

**GREENWAY NUTRIENTS, INC.,**

 Plaintiff,

v.

**STEVE BLACKBURN,**
**DAVID SELAKOVIC,**
**FULFILLMENT SOLUTIONS SERVICES, LLC,**
**SUPREME GROWERS, LLC,**

 Defendants.

---

**OPINION AND ORDER ADOPTING**
**RECOMMENDATION AND GRANTING IN PART**
**AND DENYING IN PART MOTION TO DISMISS**

---

 **THIS MATTER** comes before the Court on the Recommendation **(#124)** of the Magistrate Judge that the Defendants' Motion to Dismiss **(#109)** be granted in part and denied in part. Defendants Steve Blackburn, David Selakovic, and Fulfillment Solutions Services, LLC, filed timely Objections **(#126)** to the Recommendation.

## I. Background

 The underlying facts of this case have been repeated in several orders. In sum, Greenway, a Colorado corporation, is a supplier of plant nutrients and organic pesticides. It owns the trademark "Greenway Nutrients," which it includes on its line of products. As alleged in the Amended Complaint **(#107)**, at some unknown point in time, Greenway discovered overseas suppliers for two new products: "No Powdery Mildew" is a product that eliminates powdery mildew on agricultural products, and "No Spider Mites" is a product that eliminates

1

spider mites. Greenway began importing the products and selling them under the "Greenway Nutrients" trademark.

Later, Greenway, through its principles, met Defendant Steve Blackburn, and "his company," Defendant Fulfillment Solutions Services (FSS). Greenway and Mr. Blackburn entered into a business relationship whereby FSS was to assist Greenway in expanding its operations and market share. Greenway understood FSS to be a product fulfillment center in Florida that could bottle and ship products throughout the United States. Mr. Blackburn subsequently introduced Greenway to Mr. Selakovic, who was Mr. Blackburn's business partner.

In furtherance of their business relationship, Greenway and FSS through Mr. Blackburn executed a Fulfillment Agreement. The agreement provided that FSS would provide fulfillment services to Greenway for its new products. Mr. Selakovic purchased some of the product with his credit card, presumably to begin fulfillment services. Greenway also executed Nondisclosure Agreements[1] with Mr. Blackburn and Mr. Selakovic so that it could share its confidential information with them during the course of business.

Later, Mr. Blackburn and Mr. Selakovic allegedly fabricated a dispute with Greenway allegedly for the purpose of reneging on the contract and to keep the inventory of product they had acquired. In an attempt to resolve the fictional dispute, Mr. Blackburn represented to Greenway that Mr. Selakovic was interested in investing in Greenway. Mr. Blackburn went to Greenway's office, representing that he needed to conduct due diligence for the invest plan.

---

[1] The Defendants allege that the Nondisclosure Agreement purportedly entered into by Mr. Selakovic and attached to the Amended Complaint is a forged. The Court does not have occasion to address that issue today, as the Nondisclosure Agreement is not relevant to its ruling. However, the Court warns that the affirmative submission of false evidence is, at a minimum, akin to fraud on the Court, for which for which severe sanctions may be imposed. *See Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174, 1182 (10th Cir. 2009).

During that time, Mr. Blackburn had access to all of Greenway's proprietary and confidential information.

Greenway alleges that Mr. Blackburn and Mr. Selakovic used the confidential information that they obtained to reverse engineered Greenway's No Spider Mites product and that they began selling the reproduced, counterfeit product with the Greenway trademark. Further, Mr. Blackburn and Mr. Selakovic allegedly began selling Greenway's stock of No Spider Mites and No Powdery Mildew, which bore the Greenway trademark, without authorization. These sales took place through FSS and Defendant Supreme Growers, LCC, a Colorado limited liability company. Greenway alleges that the Defendants used Greenway's internal customer notes to sell the infringing products to Greenway's own customers.

Greenway asserts claims for breach of contract against Mr. Blackburn, FSS, and Mr. Selakovic; unjust enrichment against Mr. Blackburn, FSS, and Mr. Selakovic; and violations of the Lanham Act (trademark infringement under 15 U.S.C. § 1114, and false designation of origin under 15 U.S.C. § 1125) against all Defendants. Greenway asserts federal subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1331, and requests that the Court exercise supplemental jurisdiction over the attendant state law claims.

The Defendants move to dismiss all claims for lack of personal jurisdiction and failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(2) and (6). The matter was referred to the Magistrate Judge for a report and recommendation.

The Recommendation issued by the Magistrate Judge recommends that the Motion to Dismiss be granted with respect to the breach of contract claims and all claims against Supreme Growers, LLC. No party objects to that part of the Recommendation. The Court therefore reviews that part of the Recommendation only for clear error. *See* Fed. R. Civ. P. 72, Advisory

Committee Note. Having reviewed the Recommendation and seeing no clear error, the Court adopts the Recommendation that the Motion to Dismiss be granted, in part, with respect to the breach of contract claims and all claims against Supreme Growers, LLC. Accordingly, the breach of contract claims against Mr. Blackburn and Mr. Selakovic, and all claims against Supreme Growers, LLC, are dismissed.

The Magistrate Judge also recommends that the Motion to Dismiss be denied with respect to the claims under the Lanham Act (trademark infringement and false designation of origin) and for unjust enrichment. The Magistrate Judge found that Greenway made a *prima facie* showing of personal jurisdiction over these Defendants and that the First Amended Complaint sufficiently pled the claims. On the issue of personal jurisdiction, the Magistrate Judge determined that Mr. Blackburn, FSS, and Mr. Selakovic waived their right to contest specific personal jurisdiction pursuant to forum selection clauses found in the contracts entered into by the parties.

The Defendants filed timely Objections to the Recommendation. The Defendants object only to the Magistrate Judge's finding that the Court has personal jurisdiction over them with regard to the Lanham Act claims.

## II. Standard of Review

When a Magistrate Judge issues a Recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). This Court shall make a *de novo* determination of those portions of the Recommendation to which timely and specific objection is made. *U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a claim for lack of personal jurisdiction over the person. The Plaintiff bears the burden of establishing personal jurisdiction over the Defendants. *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, the Plaintiff's burden is light. Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of the Complaint and affidavits, the Plaintiff need only make a *prima facie* showing that jurisdiction exists. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).[2]

For purposes of reviewing a motion to dismiss, the Court accepts all well-pled facts alleged in the Complaint as true — that is, factual allegations that are plausible, non-conclusory, and non-speculative. *See Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007). If jurisdictional allegations in the Complaint are challenged by an appropriate pleading, the Plaintiff has the duty to support its allegations by competent proof. *See Pytlik v. Prof'l Res., Ltd.*, 887 F.3d 1371, 1376 (10th Cir. 1989). If the parties present conflicting affidavits, all factual disputes must be resolved in the Plaintiff's favor. *See Wenz*, 55 F.3d at 1505.

### III. Analysis

As the Court understands it, the Defendants argue that any forum selection clauses contained in the contracts attached to the complaint apply only to the breach of contract claims and do not establish a consent to personal jurisdiction for purposes of the federal Lanham Act claims. The Defendants argue that because this is a federal question case, Greenway must

---

[2] Of course, even if the Plaintiff meets its burden of establishing personal jurisdiction on the pleadings and by affidavit, it may be reviewed again at subsequent stages in the proceedings as evidence accumulates. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). Ultimately, at trial, the Plaintiff must establish that personal jurisdiction exists by a preponderance of the evidence. *See Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997).

establish an independent basis for personal jurisdiction over them with regard to the Lanham Act claims. They argue that Greenway has not alleged sufficient facts to show that the Defendants had minimum contacts with Colorado that gave rise to the Lanham Act claims.

### 1. Consent to Personal Jurisdiction

A party may consent to jurisdiction by assenting to a forum selection clause contained in a contract. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). By consenting to jurisdiction, a party waives any due process challenges that it could have otherwise brought. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590 (1991). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *See The Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992). To overcome the presumption that a forum selection clause provision is valid, a party must make "a showing of inconveniences so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching, or lack of notice." *See Riley*, 969 F.2d at 958.

Here, only the Fulfillment Agreement, entered into by Greenway and FSS through Mr. Blackburn, contains a forum selection clause.[3] The clause provides:

> This Agreement shall be deemed to have been negotiated and executed in the State of Colorado, who shall have exclusive jurisdiction over this matter with venue in Denver, CO. The laws of the State of Colorado shall govern this Agreement and all matters arising out of or otherwise relating to this Agreement. The parties hereby submit to the personal jurisdiction of the state and federal courts of the State of Colorado.

---

[3] The Non-Disclosure Agreements, purportedly entered into by Mr. Blackburn and Mr. Selakovic, contain only a provision that provides that the agreements will be governed by the law of the State of Colorado. This is a choice of law provision, not a forum selection clause. The provision does not provide for the location of dispute resolution, nor does it purport to bind the parties to the jurisdiction of a particular court. Thus, the execution of these contracts alone do not confer personal jurisdiction over Mr. Blackburn or Mr. Selakovic.

The Defendants do not dispute the validity of this clause or argue that enforcement would be unreasonable or unjust.  The Defendants argue only that the clause does not operate as consent to personal jurisdiction with regard to the Lanham Act claims asserted here.

Although the Tenth Circuit has not addressed the issue of whether a forum selection clause applies to non-contract claims, the Supreme Court has applied a forum selection clause in a case involving tort claims.  *See Carnival Cruise Lines,* 499 U.S. at 588.  Other Circuit Courts have held that where tort claims "ultimately depend on the existence of a contractual relationship" between the parties, such claims are covered by a contractually-based forum selection clause, despite the "pleading of alternative non-contractual theories of liability."  *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds*, *Lauro Lines v. Chasser*, 490 U.S. 495 (1989)); *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993) (holding that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.").

Here, the Court is persuaded that the Lanham Act claims depend on the existence of the contractual relationship between Greenway and the Defendants and involve the same operative facts as a parallel breach of contract claim.  Greenway alleges that the Defendants sold the stock of Greenway product without authorization and in violation of Greenway's trademark rights.  Prior to that, however, the parties entered into the Fulfillment Agreement, which provided that the Defendants would carry out fulfillment and distribution services for Greenway.  This obligation required the Defendants to purchase product and bottling materials and to fulfill customer orders on behalf of Greenway.  Thus, in order to determine whether the Defendants acted in violation of Greenway's rights, or rather, in accordance with the contract, will

7

necessarily rely on an interpretation of the Fulfillment Agreement. Because the Lanham Act claims are related to the Fulfillment Agreement, which expressly provides consent to jurisdiction in Colorado, the Court finds that the FSS and Mr. Blackburn have waived their right to contest personal jurisdiction in Colorado on due process grounds.

### 2. Due Process Analysis

The Court proceeds with the traditional due process analysis to determine whether it may exercise personal jurisdiction over Mr. Selakovic.

Before a federal court can assert personal jurisdiction over a non-resident defendant in a federal question case, the Court must determine (1) whether any applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of jurisdiction comports with due process. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). Because the Lanham Act does not, by itself, provide for nationwide service of process, Fed. R. Civ. P. 4(k)(1)(A) refers the Court to the Colorado long-arm statute. Colorado's long-arm statute confers maximum jurisdiction permissible consistent with the Due Process Clause. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Thus, the statutory inquiry effectively collapses into the second, constitutional inquiry. The Court therefore proceeds directly to the constitutional issue.

The due process analysis is a two-step inquiry. First, the Court examines whether the non-resident defendant has "minimum contacts" with the forum state. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). Second, the Court considers whether the exercise of jurisdiction over the defendant offends "traditional notions of fair play and substantial justice," — in other words, whether the exercise of jurisdiction is reasonable under the circumstances. *Id.*

To have sufficient minimum contacts for "specific" personal jurisdiction,[4] the out-of-state defendant must have (1) purposefully directed activities at forum residents, and (2) the litigation must result from alleged injuries that arise out of those forum-related activities. *See Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472). The touchstone of this analysis is whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The aim of the "purposeful direction" doctrine has been said to ensure that the defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state. *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475 ). The question of whether a non-resident defendant has sufficient minimum contacts with the forum state to establish personal jurisdiction must be decided on the particular facts of each case. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004).

In *Calder v. Jones*, 465 U.S 783 (1984), the Supreme Court set forth what is now known as the "*Calder* effects test." The Court held that, where a defendant intentionally engages in tortious actions outside the forum state, and her actions are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process and constitute "purposeful direction" under the "minimum contacts" analysis. *Id.* The Tenth Circuit has refined the *Calder* test to three elements, explaining that a defendant has "purposefully directed" its activities at Colorado or its residents

---

[4] The minimum contacts standard is also satisfied based on a defendant's "continuous and systematic" general business contacts with the forum state. *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984). Such contacts would establish that the Court has general personal jurisdiction over the defendant. Here, however, the Amended Complaint does not allege that any of the Defendants were engaged in systematic and continuous activity in Colorado. Thus, the Court concludes that it does not have general personal jurisdiction over the Defendants.

when the defendant has (1) taken intentional tortious action, (2) that was expressly aimed at Colorado, (3) with the knowledge that the brunt of the injury from the action would be felt in Colorado. *Dudnikov*, 514 F.3d at 1071. Further, the Tenth Circuit takes a "restrictive" approach when analyzing whether a defendant expressly aimed his activities at the forum, explaining that the "express aiming" requirement looks at the "focal point" of the defendant's intentional action, and holding that the forum state itself must be the focal point of the tort. *Id.* at 1075.

Indeed, the mere fact that an out-of-state defendant has committed a tort that causes economic injury to a forum resident does not necessarily establish that the defendant engaged in the constitutionally required minimum contacts with the forum state. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077-80 (10th Cir. 1995). Rather, the plaintiff must show that there was "something more" than the mere foreseeability of economic injury. *Id.*

For purposes of personal jurisdiction analysis, trademark infringement and false designation of origin are considered tortious acts. *See, e.g, Impact Productions, Inc. v. Impact Productions, LLC*, 341 F.Supp.2d 1186, 1190 (D.Colo. 2004). Mr. Selakovic argues that under the *Calder* effects test, Greenway has not alleged that he "expressly aimed" any tortious activity at Colorado.

The Court disagrees. Trademark infringement turns on whether customers are likely to be confused, mistaken, or deceived by the use of a trademarked product. 15 U.S.C. §§ 1114(1). Thus, the effects of an infringement will be felt wherever the infringing products are marketed or sold because that is where the confusion, mistake, or deceit will occur. Here, Greenway alleges that the Defendants sold counterfeit and unauthorized product through a Colorado distributor, Supreme Growers, LLC. It is therefore reasonable to infer that the effects of the Defendants' allegedly infringing acts would be felt in Colorado. Further, Greenway alleges that Mr.

Selakovic used his credit card to purchase raw product for the benefit of Greenway, a forum resident, and in furtherance of their business relationship.  Mr. Selakovic therefore took affirmative acts to establish a business connection in Colorado.  The Court finds that the Amended Complaint sufficiently alleges that Mr. Selakovic expressly aimed his conduct at Colorado.

Accordingly, the Court agrees with the Magistrate Judge that at this early stage of litigation, Greenway has met its burden of making a *prima facie* showing of personal jurisdiction over Defendants Blackburn, FSS, and Selakovic.

## IV.  Conclusion

For the forgoing reasons, the Recommendation **(#124)** of the Magistrate Judge that the Defendant's Motion to Dismiss **(#109)** be granted in part and denied in part is **ADOPTED**.  The Motion to Dismiss is **GRANTED** with respect to the breach of contract claims and all claims against Supreme Growers, LLC.  The motion is **DENIED** in all other respects.

Dated this 31st day of March, 2015.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge